

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 09 2016
Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on June 9, 2016

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of M.W. and W.D., | ) ) ) | |
| Respondents, | ) ) | No. 90570-3 |
| v. | ) ) | EN BANC |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES, STATE OF WASHINGTON, and WESTERN STATE HOSPITAL, | ) ) ) ) ) ) | |
| Petitioners. | ) ) | Filed _____ JUN 09 2016 _____ |

FAIRHURST, J.—We accepted discretionary review of this case after the superior court commissioner declared a 2013 amendment to the involuntary treatment act (ITA) unconstitutional. The statutory provision at issue, former RCW 71.05.320(3)(c)(ii) (2013),[1] modifies the procedure for recommitting a narrow subset of mentally ill individuals—those found incompetent to stand trial for violent felony charges—to additional 180-day periods of involuntary treatment.

---

[1] The 2013 statute at issue remains effective in substance, but it has been amended, and the provision is now located at RCW 71.05.320(4)(c)(ii).

The trial court commissioner held that former RCW 71.05.320(3)(c)(ii) is unconstitutional on multiple grounds, including substantive and procedural due process, vagueness, equal protection, and the right to a jury trial. We reverse the trial court and uphold the constitutionality of former RCW 71.05.320(3)(c)(ii).

## I. BACKGROUND

A.    Statutory scheme

Chapter 71.05 RCW governs the involuntary treatment and civil commitment of mentally ill individuals. When a court declares that an individual is incompetent to stand trial for felony charges, the charges against that person are dismissed without prejudice and the person must undergo a mental health evaluation for civil commitment and treatment. Former RCW 10.77.086(4) (2013). The civil commitment scheme for these individuals generally involves short-term periods of confinement, with the option for the State to petition for additional terms by the expiration of each period of confinement.

In 2013, H.B. 1114 amended portions of the ITA that govern this process, including adding former RCW 71.05.320(3)(c)(ii), which alters the recommitment process for that subset of individuals who are incompetent to stand trial for violent felony charges. ENGROSSED SECOND SUBSTITUTE H.B. 1114, 63rd Leg., Reg. Sess. (Wash. 2003).

The State may initially petition for up to 180 days of treatment for individuals found incompetent to stand trial for felony charges. RCW 71.05.280(3), .290(3). The State must prove that "as a result of a mental disorder, [the person] presents a substantial likelihood of repeating similar acts." RCW 71.05.280(3). If the person is charged with a felony classified as violent, the 2013 amendments require the court to "determine whether the acts the person committed constitute a violent offense under RCW 9.94A.030." RCW 71.05.280(3)(b).

After this initial 180-day commitment term, the State may file a new petition for an additional 90 or 180 days of involuntary treatment based on the grounds set forth in RCW 71.05.280. Prior to 2013, this provision set forth four grounds for recommitment.[2] All involved a full evidentiary hearing to determine if

---

[2]Former RCW 71.05.280 (2008) provided four grounds for recommitment under RCW 71.05.320:

(1) Such person after having been taken into custody for evaluation and treatment has threatened, attempted, or inflicted: (a) Physical harm upon the person of another or himself or herself, or substantial damage upon the property of another, and (b) as a result of mental disorder presents a likelihood of serious harm; or

(2) Such person was taken into custody as a result of conduct in which he or she attempted or inflicted physical harm upon the person of another or himself or herself, or substantial damage upon the property of others, and continues to present, as a result of mental disorder, a likelihood of serious harm; or

(3) Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(4), and has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts. In any proceeding pursuant to this subsection it shall not be necessary to show intent, willfulness, or state of mind as an element of the crime; or

(4) Such person is gravely disabled.

recommitment is warranted. *See* RCW 71.05.310. The 2013 amendment at issue in this case alters that procedure for a small group of individuals.

Former RCW 71.05.320(3)(c)(ii)[3] provides a special procedure for petitioning for the continued commitment of individuals incompetent to stand trial when the

---

[3]Former RCW 71.05.320 provides:

(3) The person shall be released from involuntary treatment at the expiration of the period of commitment imposed under subsection (1) or (2) of this section unless the superintendent or professional person in charge of the facility in which he or she is confined, or in the event of a less restrictive alternative, the designated mental health professional, files a new petition for involuntary treatment on the grounds that the committed person:

(a) During the current period of court ordered treatment: (i) Has threatened, attempted, or inflicted physical harm upon the person of another, or substantial damage upon the property of another, and (ii) as a result of mental disorder or developmental disability presents a likelihood of serious harm; or

(b) Was taken into custody as a result of conduct in which he or she attempted or inflicted serious physical harm upon the person of another, and continues to present, as a result of mental disorder or developmental disability a likelihood of serious harm; or

(c)(i) Is in custody pursuant to RCW 71.05.280(3) and as a result of mental disorder or developmental disability continues to present a substantial likelihood of repeating acts similar to the charged criminal behavior, when considering the person's life history, progress in treatment, and the public safety.

(ii) In cases under this subsection where the court has made an affirmative special finding under RCW 71.05.280(3)(b), the commitment shall continue for up to an additional one hundred eighty day period whenever the petition presents prima facie evidence that the person continues to suffer from a mental disorder or developmental disability that results in a substantial likelihood of committing acts similar to the charged criminal behavior, unless the person presents proof through an admissible expert opinion that the person's condition has so changed such that the mental disorder or developmental disability no longer presents a substantial likelihood of the person committing acts similar to the charged criminal behavior. The initial or additional commitment period may include transfer to a specialized program of intensive support and treatment, which may be initiated prior to or after discharge from the state hospital; or

(d) Continues to be gravely disabled.

If the conduct required to be proven in (b) and (c) of this subsection was found by a judge or jury in a prior trial under this chapter, it shall not be necessary to prove such conduct again.

court has determined they committed an act constituting a violent felony. Unlike other proceedings under the ITA that proceed directly to a full evidentiary hearing upon the State's petition for recommitment, the new process begins with a preliminary hearing before a full evidentiary hearing is warranted.

In the new preliminary hearing, a superior court commissioner determines if the State's petition meets its initial burden. The State has the burden of presenting prima facie evidence that "the person continues to suffer from a mental disorder or developmental disability that results in a substantial likelihood of committing acts similar to the charged criminal behavior." Former RCW 71.05.320(3)(c)(ii). The State must show this evidence through two affidavits as required by former RCW 71.05.290(2)(e) (2009), which lists the health care providers qualified to support the additional confinement and states that they must "describe in detail" the facts justifying recommitment and analyze less restrictive alternatives.

If the State fails to meet this burden, then the petition will be dismissed and the person is released unless the State can proceed on alternative grounds for recommitment. If the State satisfies its burden, then the individual may rebut the State's showing by presenting "proof through an admissible expert opinion that the person's condition has so changed such that the mental disorder or developmental disability no longer presents a substantial likelihood of the person committing acts similar to the charged criminal behavior." Former RCW 71.05.320(3)(c)(ii). If the

individual fails to rebut the State's evidence, then the court will order an additional period of 180 days of commitment. If the individual does present such evidence, then they proceed to a full evidentiary hearing with the same procedural mechanisms and safeguards as other evidentiary hearings under the ITA. It remains the State's burden to prove recommitment for an additional 180-day period is warranted through clear, cogent, and convincing evidence; otherwise, the person is released. *See* RCW 71.05.310 (noting the State bears the burden of proof by clear, cogent, and convincing evidence); former RCW 71.05.320(3) ("The person shall be released from involuntary treatment at the expiration of the period of commitment" unless the proper mental health professional "files a new petition for involuntary treatment.").

B.    Factual and procedural history

The respondents' cases are unrelated, but they were consolidated because they both challenged the constitutionality of recommitment under former RCW 71.05.320(3)(c)(ii).[4] M.W. was charged with felony assault in the second degree when he attacked another patient at Navos psychiatric hospital, stomping on his head

---

[4]Although the initial stages of their recommitment proceedings were tried separately, M.W.'s and W.D.'s procedural history is discussed together due to the similarity of their respective cases.

three times. W.D. was charged with felony assault in the second degree when he punched a stranger in the face with no warning or provocation.

Both men's charges were dismissed without prejudice after a judge determined that they were incompetent to stand trial and their competency could not be restored. In each case, the court ordered mental health evaluations under former RCW 10.77.086(4) to determine if they should be involuntarily committed. The State petitioned for civil commitment on three statutory grounds: RCW 71.05.280(2) (taken into custody as a result of attempting to or inflicting physical harm on another and continuing to present a likelihood of serious harm as a result of a mental disorder), (3) (judge found them incompetent to stand trial for violent felony charges and that as a result of a mental disorder, they continued to present a substantial likelihood of repeating similar acts), and (4) (gravely disabled).

M.W. and W.D. each stipulated to commitment for a 180-day period and waived their right to a full evidentiary hearing. The trial court committed M.W. and W.D. to Western State Hospital for 180 days of involuntary treatment on multiple grounds, including RCW 71.05.280(3). The court also made a special finding in each case pursuant to RCW 71.05.280(3) that the person had committed acts constituting assault in the second degree, which is a violent felony under RCW 9.94A.030.

Leading up to the expiration of the initial period of involuntary commitment, the State petitioned for an additional 180-day period of involuntary treatment,

implicating the new procedure at issue in this case. The State alleged two grounds for recommitment: RCW 71.05.280(4) (gravely disabled) and (3) (incompetent person charged with a violent felony who continues to present a substantial likelihood of repeating similar acts). The latter ground triggers the provision at issue, former RCW 71.05.320(3)(c)(ii), which provides a special procedure for recommitting individuals subject to a judge's special finding under RCW 71.05.280(3)(b) that they committed a violent felony.

M.W. and W.D. each filed a motion in response to the State's petition for continued confinement that challenged the constitutionality of former RCW 71.05.320(3)(c)(ii). The trial court then consolidated their cases.

The superior court commissioner declared former RCW 71.05.320(3)(c)(ii) unconstitutional on multiple grounds: substantive and procedural due process, vagueness, equal protection, and the right to a jury trial. The court ordered the recommitment process to proceed without the unconstitutional provision. M.W. and W.D then received full evidentiary hearings assessing their eligibility for further involuntary treatment and were each recommitted to an additional 180-day period on other grounds.

The parties agreed and the trial court stipulated to discretionary review in the Court of Appeals, which then transferred the case to us. Commissioner Pierce accepted review. The American Civil Liberties Union of Washington, Disability

Rights Washington, and Washington Defender Association filed a joint amicus brief supporting M.W.'s and W.D.'s positions.

## II. ISSUES

A. Should we decide the merits of M.W.'s and W.D.'s claims because although technically moot, they are matters of continuing and substantial public interest?

B. Does former RCW 71.05.320(3)(c)(ii) violate substantive due process?

C. Does former RCW 71.05.320(3)(c)(ii) violate procedural due process?

D. Is former RCW 71.05.320(3)(c)(ii) unconstitutionally void for vagueness?

E. Does former RCW 71.05.320(3)(c)(ii) violate the right to a trial by jury?

F. Does former RCW 71.05.320(3)(c)(ii) violate equal protection?

## III. ANALYSIS

The trial court commissioner declared that former RCW 71.05.320(3)(c)(ii) violated multiple constitutional provisions, including substantive and procedural due process, vagueness, equal protection, and the right to a jury trial. We review constitutional questions de novo, with a presumption that they are constitutional. *City of Bothell v. Barnhart*, 172 Wn.2d 223, 229, 257 P.3d 648 (2011). The party challenging a statute has the burden of proving it is unconstitutional. *Id.* Generally, parties may challenge a statute as unconstitutional facially or as applied to them. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004). We reverse the trial

court because M.W. and W.D. fail to prove that former RCW 71.05.320(3)(c)(ii) is unconstitutional, either facially or as applied to them,[5] particularly when we construe the statute in light of two relevant canons of construction—our duty to read statutory provisions within their broader context and our duty to construe statutes to preserve their constitutionality.

A.    We will address the merits of M.W.'s and W.D.'s claims because they are of continuing and substantial public interest

We first decide whether this case warrants our review under the mootness doctrine. A case is moot when "the court can no longer provide effective relief." *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). But we have discretion to review cases that are technically moot if we determine they involve issues of continuing and substantial public interest. *State v. Beaver*, 184 Wn.2d 321, 330, 358 P.3d 385 (2015) (citing *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). Courts look to three factors when considering whether a case fits the continuing and substantial public interest exception: "'[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question.'" *Hunley*, 175 Wn.2d at 907 (alterations in

---

[5]M.W.'s and W.D.'s as-applied challenge does not significantly differ from their facial challenge because the statute was never actually applied to them; once the trial court commissioner declared former RCW 71.05.320(3)(c)(ii) unconstitutional, their recommitment proceeded on different grounds.

original) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 736, 214 P.3d 141 (2009)).

The parties agree that this case is technically moot because M.W. and W.D. were recommitted on alternative statutory grounds. They ask us to review the merits under the substantial public interest exception.

We have recognized other situations where it is in the continuing and substantial public interest to review cases involving civil commitment, even when technically moot. *See, e.g.*, *In re Det. of Swanson*, 115 Wn.2d 21, 25, 804 P.2d 1 (1990) ("'[T]he need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest.'" (internal quotation marks omitted) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986))); *Beaver*, 184 Wn.2d at 331.

The issues presented in this case satisfy the public interest exception to the mootness doctrine. First, the questions presented are public in nature because they involve significant constitutional questions and statutory interpretation. *Beaver*, 184 Wn.2d at 331. Second, our resolution of this case would provide guidance for future public officials implementing the ITA. *Id.* Third, this issue is likely to recur because the period of commitment is short (180 days) and the State may petition for another term at the end of that period if the patients are not eligible for release. Therefore,

we proceed to the merits of this case as a matter of continuing and substantial public interest.

B.     Former RCW 71.05.320(3)(c)(ii) does not violate substantive due process

Substantive due process "requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Foucha v. Louisiana*, 504 U.S. 71, 79, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992). Civil commitment must be based on findings of both mental illness and dangerousness in order to satisfy substantive due process. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 27, 857 P.2d 989 (1993) (citing *Foucha*, 504 U.S. 71). Because civil commitment laws deprive individuals of their fundamental right to liberty, they must be narrowly tailored to serve compelling government interests. *Id.* at 26.

The State relies on *State v. McCuistion*, 174 Wn.2d 369, 275 P.3d 1092 (2012) to support the constitutionality of former RCW 71.05.320(3)(c)(ii). *McCuistion* addresses petitions for release of sexually violent predators under chapter 71.09 RCW. The State argues that the process for recommitting violent individuals subject to former RCW 71.05.320(3)(c)(ii) is at least as protective as the continued commitment procedure for sexually violent predators that we upheld in *McCuistion*. *McCuistion*, relying on prior cases from this court and the United States Supreme Court, recognized that substantive due process requires only "periodic review of the patient's suitability for release" in the sexually violent predator context, and that any

additional protections went above and beyond the State's constitutional obligations to respect liberty interests of those subject to involuntary treatment. *Id.* at 385.

M.W. and W.D. counter that *McCuistion* is inapplicable to proceedings under chapter 71.05 RCW. We agree that *McCuistion* does not control here. We have recognized that there are good reasons to distinguish sexually violent predators committed under chapter 71.09 RCW from mentally ill individuals committed under chapter 71.05 RCW. *See, e.g., Young*, 122 Wn.2d at 44-45; *In re Det. of Morgan*, 180 Wn.2d 312, 330 P.3d 774 (2014). For instance, the statutory commitment schemes are different, the individuals' treatment needs are distinct, and the state interests involved do not always overlap. Therefore, we evaluate the constitutionality of former RCW 71.05.320(3)(c)(ii) independently of *McCuistion*.

The ITA serves a number of important governmental interests. M.W. and W.D. point out that the purpose of the ITA is to prevent indefinite, involuntary commitment of mentally ill individuals. Former RCW 71.05.010(1) (1998). But the ITA is also intended to serve other governmental interests that support the State's position, including protecting public safety and providing continuing and appropriate treatment for individuals with serious mental disorders. Former RCW 71.05.010(2), (7). "[T]he State has a legitimate interest under its police and *parens patriae* powers in protecting the community from the dangerously mentally ill and in providing care to those who are unable to care for themselves." *LaBelle*, 107

Wn.2d at 201; *Addington v. Texas*, 441 U.S. 418, 426, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

When the legislature amended the ITA in 2013, it made specific findings about the need to further protect the public from certain violent mentally ill individuals. The legislature recognized that violent felony offenders who were deemed incompetent to stand trial fell into a gap in the statutory system. Both of the "primary statutory mechanisms designed to protect the public from violent behavior"—criminal commitment or long-term civil commitment as not guilty by reason of insanity—are not available to individuals who are incompetent to stand trial. LAWS OF 2013, ch. 289, § 1. Instead, these individuals were subject to the series of short-term civil commitments under the pre-2013 ITA. The 2013 amendments were designed to protect public safety from violent acts and provide proper treatment for people charged with these acts who were found incompetent to stand trial. Both of these interests qualify as compelling under substantive due process. *See, e.g., Labelle*, 107 Wn.2d at 201.

M.W. and W.D. assert that former RCW 71.05.320(3)(c)(ii) is not narrowly tailored to serve compelling state interests. They believe the most important state interests involved in the ITA are the prevention of indefinite confinement of mentally ill individuals and encouraging treatment in the community. Former RCW 71.05.010(1), (6). M.W. and W.D. argue that former RCW 71.05.320(3)(c)(ii) does

not serve these goals because it makes the process easier for the State to recommit certain mentally ill people, possibly indefinitely.

This argument mischaracterizes the civil commitment scheme under the ITA. Unlike civil commitment for sexually violent predators, which provides a single indefinite term of commitment with the possibility to petition for earlier release, the ITA allows only short periods of confinement (no more than 180 days). At the expiration of each period, the burden is on the State to bring a new petition for an additional commitment period. If the State declines to do so or does not meet its burden, the individual is automatically released. Former RCW 71.05.320(3)(c)(ii) does nothing to change this structure. While the new provision alters the process for when and how to present evidence for recommitment of certain individuals, it does not invert the civil treatment scheme into indefinite commitment. By retaining the system of short periods of confinement with the burden on the State to request and prove recommitment is warranted at the end of each period, former RCW 71.05.320(3)(c)(ii) is narrowly tailored to serve the goal of preventing the indefinite commitment of mentally ill individuals. Moreover, the ITA serves the state interest of encouraging community treatment by requiring every petition, including those filed under former RCW 71.05.320(3)(c)(ii), to explain whether less restrictive alternative placements are appropriate. RCW 71.05.290(2).

As for the State's asserted interests in protecting the public from serious violent actions of mentally ill individuals, M.W. and W.D. assert that former RCW 71.05.320(3)(c)(ii) is not narrowly tailored to fit those ends.

We conclude that former RCW 71.05.320(3)(c)(ii) is appropriately tailored to satisfy compelling state interests in protecting public safety and ensuring appropriate treatment for certain mentally ill individuals. The 2013 amendments to the ITA are tailored to serve a very particular group in need of proper care who pose a unique threat to public safety—mentally ill patients found incompetent to stand trial for violent felonies when a judge has made a special finding that they committed the violent act. The recommitment process under former RCW 71.05.320(3)(c)(ii) is designed to protect the public safety by ensuring these particular individuals can remain in treatment for an additional six months when the State requests an additional term of commitment and proves that the individuals continue to pose a high risk of committing similar violent conduct as a result of their mental illness.

Former RCW 71.05.320(3)(c)(ii) serves the two touchstones of substantive due process relevant to the civil commitment process—ensuring initial and continued confinement is predicated on an individual's mental illness and dangerousness. *Foucha*, 504 U.S. at 76. In every petition for 180 days of civil commitment under the ITA, whether for initial or continued confinement, the State bears the burden of demonstrating the person's mental illness and dangerousness.

The petition must include two affidavits from a list of qualified mental health professionals who assert facts demonstrating "the person continues to suffer from a mental disorder or developmental disability that results in a substantial likelihood of committing acts similar to the charged criminal behavior," among other requirements. Former RCW 71.05.320(3)(c)(ii); former RCW 71.05.290(2). Former RCW 71.05.320(3)(c)(ii) is subject to these petition requirements, which help ensure only individuals who are mentally ill and dangerous are eligible for additional confinement.

We hold that former RCW 71.05.320(3)(c)(ii) satisfies substantive due process.

C.    Former RCW 71.05.320(3)(c)(ii) does not violate procedural due process

Procedural due process requires that the government provide proper notice and the opportunity to be heard when it seeks to deprive an individual of a protected interest. *Beaver*, 184 Wn.2d at 336. We review the constitutionality of the ITA's procedures under the three-part balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 14 (1976). *See In re Harris*, 98 Wn.2d 276, 285, 654 P.2d 109 (1982). Those factors consist of:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

1.   *Private interests weigh in favor of M.W. and W.D.*

Both parties agree that civil commitment schemes involve a "'massive curtailment of liberty.'" *LaBelle*, 107 Wn.2d at 204 (internal quotation marks omitted) (quoting *Harris*, 98 Wn.2d at 283); *see also Addington*, 441 U.S. at 425 ("[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."). Therefore, this factor weighs in favor of M.W. and W.D. The parties' procedural due process dispute focuses on the second *Mathews* factor.

2.   *The parties dispute the risk of erroneous deprivation and value of additional procedural safeguards*

Former RCW 71.05.320(3)(c)(ii) requires two preliminary steps before a full evidentiary hearing on a 180-day recommitment is warranted for individuals found incompetent to stand trial for violent felony offenses.[6] First, the State must file a petition presenting "prima facie evidence that the person continues to suffer from a mental disorder or developmental disability that results in a substantial likelihood of committing acts similar to the charged criminal behavior." Former RCW

---

[6]The State again urges us to compare the recommitment procedure under former RCW 71.05.320(3)(c)(ii) to the sexually violent predator procedure we upheld as constitutional in *McCuistion*. However, *McCuistion* does not control proceedings under the ITA; therefore, we independently evaluate whether former RCW 71.05.320(3)(c)(ii) violates procedural due process.

71.05.320(3)(c)(ii). The State's petition must include two affidavits from qualified health care providers who must "describe in detail" the facts justifying recommitment, analyze less restrictive alternatives, and state their willingness to testify to these facts. Former RCW 71.05.290. Second, if the State meets this burden, then the individual must present "proof through an admissible expert opinion that the person's condition has so changed such that the mental disorder or developmental disability no longer presents a substantial likelihood of the person committing acts similar to the charged criminal behavior." Former RCW 71.05.320(3)(c)(ii). If both parties meet their initial burden, then they proceed to a full evidentiary hearing.

The superior court commissioner held that former RCW 71.05.320(3)(c)(ii) is unconstitutional under procedural due process for two main reasons. First, the commissioner stated that the statute impermissibly shifts the burden of proof from the State to the individual. Second, the commissioner found that former RCW 71.05.320(3)(c)(ii) unconstitutionally denies individuals the rights of a full judicial hearing, including the right to confront and cross-examine witnesses and evidence, the right to be proceeded against according to the Rules of Evidence, the statutory right to remain silent, and the right to treatment in the least restrictive environment. The superior court commissioner seemed to read former RCW 71.05.320(3)(c)(ii) in isolation and consider the due process implications only at the prima facie stage of

recommitment. But when the provision is properly read in its statutory context, which provides significant procedural protections to lessen the risk of erroneous recommitment, this factor weighs in favor of upholding the violent felony recommitment scheme as constitutional.

Former RCW 71.05.320(3)(c)(ii) does not relieve the State of its burden of proof in recommitment proceedings; it merely shifts a burden of production at a preliminary stage of the proceedings. M.W. and W.D. focus on the statutory language of former RCW 71.05.320(3)(c)(ii) that requires an individual to present "proof" through an admissible expert opinion that they no longer meet the requirements of commitment before they receive an evidentiary hearing. *See* former RCW 71.05.320(3)(c)(ii) (requiring recommitment for 180 days if the State meets its prima facie burden, "unless the person submits proof through an admissible expert opinion that the person's condition has so changed . . ."). They assert this "turns the concept of due process on its head" by shifting the burden of proof to the committed party. Br. of Resp't at 33. But the State contends, and we agree, that an individual need only *produce* such evidence to receive a hearing; the purpose of the hearing is then to weigh the parties' evidence. Moreover, at all times the State has the burden of proof; the individual need meet only a burden of coming forward with any admissible expert opinion explaining that the individual is no longer

substantially likely to commit violent acts as a result of a mental disorder.[7] Former RCW 71.05.320(3)(c)(ii).

The standard of proof the State must meet to recommit an individual also lowers the risk of erroneous deprivations of liberty. Due process requires that the State must bear the burden of civilly committing an individual by the standard of proof of clear, cogent, and convincing evidence. *Born v. Thompson*, 154 Wn.2d 749, 761, 117 P.3d 1098 (2005). It is clear from the language of the statute that the State must satisfy this burden for a judge to order recommitment after a full evidentiary hearing under the ITA. RCW 71.05.310 ("The burden of proof shall be by clear, cogent, and convincing evidence and shall be upon the petitioner."). Although former RCW 71.05.320(3)(c)(ii) does not explicitly state a standard of proof the State must meet in its prima facie petition if the individual does not rebut the State's claim, the State asserts it is still held to the clear, cogent, and convincing standard at the prima facie stage.

We agree with the State that a clear, cogent, and convincing standard of proof must apply whenever it recommits an individual, either at the prima facie stage if

---

[7]The dissent confuses "proof" in the sense of bringing forth some evidence—such as submitting an admissible expert opinion—with an ultimate burden to "prove" something—a burden that the statute does not place upon respondents for recommitment. Dissent at 2-3. In light of the statutory text of former RCW 71.05.320(3)(c)(ii) and our duty to interpret statutes constitutionally when possible, we reject the dissent's suggestion that the statute requires individuals to present more than an admissible expert opinion regarding the person's changed mental condition.

21

the individual does not respond to the petition or at a full evidentiary hearing. We find unconvincing M.W. and W.D.'s reference to *Petersen* for the proposition that trial standards such as clear, cogent, and convincing can apply only after both parties have presented evidence at a full hearing. *See In re Det. of Petersen*, 145 Wn.2d 789, 797-98, 275 P.3d 1092 (2012).

Prima facie evidence means evidence that is "sufficient" to sustain a judgment. *Murphy v. Immigration & Naturalization Serv.*, 54 F.3d 605, 610 (9th Cir. 1995) ("Prima facie evidence is 'evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence.'" (quoting BLACK'S LAW DICTIONARY 1190 (6th ed. 1990))); *see also* BLACK'S LAW DICTIONARY 677 (10th ed. 2014).

What constitutes "sufficient" evidence can depend on the context. M.W. and W.D. point to *Petersen*, 145 Wn.2d at 797-98, to suggest the State needs to set forth only mere allegations and the court cannot weigh any evidence at the prima facie stage. *See also In re Pers. Restraint of Meirhofer*, 182 Wn.2d 632, 343 P.3d 731 (2015) (explaining the probable cause hearing for sexually violent predators). While this may be the case in those contexts, these cases are distinguishable because they involved our analysis of a distinct statutory scheme—probable cause hearings to preliminarily assess the release of sexually violent predators. The statutes at issue in *Petersen* specifically required the court to determine if "facts exist" and if "probable

cause exists" before proceeding to a further hearing. *See* former RCW 71.09.090(2) (1995). Former RCW 71.05.320(3)(c)(ii), in contrast, does not set any such standard of proof. Construing former RCW 71.05.320(3)(c)(ii) constitutionally, as we must, we agree with the State that it must provide sufficient proof to warrant recommitment of violent, incompetent individuals at the prima facie stage, even when the individual fails to offer any rebuttal evidence. The State continues to bear the burden of proof by clear, cogent, and convincing evidence; an individual's decision not to respond to this evidence does not alter the State's burden.

In addition to misconstruing the burden of proof, the trial court commissioner also misinterpreted other significant procedural protections that apply at the prima facie stage. In order to justify commitment for each 180-day period, the State must present a petition that includes at least two affidavits from qualified professionals describing the person's behavior supporting recommitment and explaining if any other less restrictive alternative treatments are available to the person. Former RCW 71.05.290(2). Former RCW 71.05.320(1) and (2) (2013) further demonstrate that the fact finder must determine if less restrictive treatment alternatives are warranted when recommitting an individual to 180-day periods.

Beyond the prima facie stage, when the entire process for recommitment is viewed together as a whole—from the State's initial petition to the individual's opportunity for rebuttal to the fact finder's determination of release or

recommitment—former RCW 71.05.320(3)(c)(ii) does not offend procedural due process. This provision does not deny the procedural protections in other provisions of the ITA, such as the right to counsel (at public expense if the person is indigent),[8] the right to remain silent, the right to present evidence and cross-examine witnesses, the right to refuse medication prior to a hearing, and the right to an expert provided at public expense if the patient is indigent. RCW 71.05.210 ("beginning twenty-four hours prior to a trial or hearing pursuant to RCW . . . 71.05.320, . . . the individual may refuse psychiatric medications"), .360(5)(b)-(e), (12); *see also* RCW 71.05.360(1)(a) ("Every person involuntarily detained or committed under the provisions of this chapter shall be entitled to all the rights set forth in this chapter . . . and shall retain all rights not denied him or her under this chapter."). The individual also retains the right to request a jury trial at commitment hearings. RCW 71.05.310. Finally, the ITA includes an additional procedural safeguard beyond the hearing process: the person in charge of the treating hospital or facility can release or order less restrictive treatment for the individual at any time. RCW 71.05.330(1); former RCW 71.05.340(1) (2009). These ample protections help reduce the risk of erroneous decisions.[9]

---

[8]In addition to the statutory and regulatory basis allowing individuals the right to counsel under the ITA, *see* RCW 71.05.360(5)(b); WAC 388-865-0566(2), the record in this case also demonstrates that M.W. and W.D. were represented by counsel prior to recommitment under the challenged statutory provision. *See* Sealed Clerk's Papers at 34-41, 380-85.

[9]The dissent asserts that many of the procedural protections in the ITA do not apply to the recommitment process under former RCW 71.05.320(3)(c)(ii). We disagree. Reading former

The fact that the individual must put forth some evidence before some of these protections can apply at a full evidentiary hearing does not violate due process. There would be little value in requiring some of these procedures at an earlier stage in the recommitment proceedings because the burden on the individual to get to the evidentiary hearing is relatively low. Moreover, the risk of erroneous deprivation is low because if the individual cannot meet the burden of producing at least one admissible expert opinion stating he no longer presents a substantial likelihood of committing similar violent acts as a result of his mental condition, then it is unlikely that the individual would be able to prevail in a full evidentiary hearing. Therefore, procedural safeguards weigh in favor of the constitutionality of former RCW 71.05.320(3)(c)(ii).

3.    *Governmental interests weigh in favor of the State*

In *McCuistion*, we recognized that the government has important interests in increasing public safety, encouraging effective treatment of violent mentally ill individuals, and avoiding the expense of unnecessary evidentiary hearings. 174 Wn.2d at 394. Although the context is distinct, each of those interests applies here.

---

RCW 71.05.320(3)(c)(ii) in light of our duty to construe statutes constitutionally and the broader statutory context suggests that a number of procedural protections are available to individuals subject to this recommitment process. If an individual in the future were denied such procedural rights, that could be the basis for an as applied challenge, but we do not see these speculative future claims as reasons to declare the statute unconstitutional either facially or as applied to M.W. or W.D.

The ITA is designed to provide treatment to individuals and to provide public safety protections through graduated periods of short-term involuntary civil commitment. The public safety concerns are even higher for individuals who are incompetent to stand trial but a judge has made a special finding that they committed a violent felony act. The legislature slightly reformed the recommitment process for this particular group of individuals. The new process still allows the individuals the right to a full evidentiary hearing, but it minimizes the time, effort, and expense of such hearings when the individual chooses not to come forward with evidence to rebut the State's petition for recommitment. The government has legitimate interests in conserving resources in these narrow circumstances.

4. *Taken together, the* Mathews *factors support the constitutionality of former RCW 71.05.320(3)(c)(ii)*

Weighing the competing interests and procedural protections, former RCW 71.05.320(3)(c)(ii) satisfies procedural due process. The individuals subject to former RCW 71.05.320(3)(c)(ii) have significant liberty interests at stake, but the government also has important interests in avoiding overly burdensome and duplicative evidentiary hearings every six months if an individual chooses not to rebut the State's prima facie showing in its petition for recommitment. The second *Mathews* factor tips the balance in favor of the State because, when read as a whole, the process for recommitting individuals whom a judge found committed a violent

felony act consists of sufficient procedural safeguards and a low risk of erroneous deprivation of rights.

D.   Former RCW 71.05.320(3)(c)(ii) is not unconstitutionally void for vagueness

The vagueness doctrine protects procedural due process by ensuring laws provide notice and clear standards to prevent arbitrary enforcement. *LaBelle*, 107 Wn.2d at 201. The purpose of this doctrine is to "provide fair notice to citizens as to what conduct is proscribed and to protect against arbitrary enforcement of the laws." *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988). The party challenging a law as void for vagueness bears the heavy burden of proving its unconstitutionality. *Id.*

When considering a vagueness challenge, we do not consider the statutory provision in isolation; rather, we must evaluate the provision in its broader statutory context. *City of Spokane v. Douglass*, 115 Wn.2d 171, 180, 795 P.2d 693 (1990). Although we have a duty to construe statutes strictly when, like here, a significant deprivation of liberty is involved, "our primary objective in interpreting a statute is to ascertain and give effect to the intent of the Legislature." *LaBelle*, 107 Wn.2d at 205. We also have a duty to construe statutes constitutionally. *State v. Jorgenson*, 179 Wn.2d 145, 150, 312 P.3d 960 (2013).

The superior court commissioner declared former RCW 71.05.320(3)(c)(ii) unconstitutionally void for vagueness for two reasons. First, the commissioner

declared the law vague because it does not adequately specify a process for reviewing the State's presentation of prima facie evidence. Second, the commissioner found the law unconstitutionally vague because it fails to state the burden of proof and procedure an individual must satisfy to rebut the State's prima facie showing. M.W. and W.D. further elaborate that the statutory requirement for an individual to present proof is unconstitutionally vague without further guidance on how an individual should seek out and introduce this proof.

We reject M.W.'s and W.D.'s vagueness claim. The language of former RCW 71.05.320(3)(c)(ii) clearly explains both what type of evidence the State and an individual must produce to meet their initial burdens and how to make those showings. Both parties must submit evidence relating to the person's "substantial likelihood of committing acts similar to the charged criminal behavior" as a result of a mental disorder or disability. Former RCW 71.05.320(3)(c)(ii). The State's evidence must come from affidavits of two mental health professionals (with further specifics elaborated in former RCW 71.05.290(2)). The individual need only produce an admissible opinion from any expert. RCW 71.05.320(3)(c)(ii). Although M.W. and W.D. focus on the statute's use of the word "proof," we agree with the State that an individual needs to submit only the requisite type of evidence to satisfy its burden at this prima facie stage because the State continues to bear the burden of proof by clear, cogent, and convincing evidence throughout the recommitment

process. RCW 71.05.310; *see supra* pp. 20-23. When read in its statutory context, former RCW 71.05.320(3)(c)(ii) provides sufficient notice and standards to survive M.W.'s and W.D.'s vagueness challenge.

E.    Former RCW 71.05.320(3)(c)(ii) does not violate the right to a trial by jury

The Washington Constitution, article I, section 21, provides, "The right of trial by jury shall remain inviolate." To determine whether that provision grants the right to a jury trial in certain circumstances, we apply a two-part test. First, we determine the scope of the right to a jury trial as it existed at the time of our founding in 1889; second, we determine if the type of action at issue is similar to one that would include the right to a jury trial at that time. *Endicott v. Icicle Seafoods, Inc.*, 167 Wn.2d 873, 884, 224 P.3d 761 (2010).

The superior court commissioner held that former RCW 71.05.320(3)(c)(ii) violates individuals' statutory and state constitutional rights to a jury trial. M.W. and W.D. argue that individuals subject to former RCW 71.05.320(3)(c)(ii) are constitutionally entitled to a jury trial when facing recommitment under that statute. They cite to historical cases discussing the right to a jury for civil commitment proceedings, *In re Detention of Ellern*, 23 Wn.2d 219, 223, 160 P.2d 639 (1945) and *In re Quesnell*, 83 Wn.2d 224, 242, 517 P.2d 568 (1973), and two cases recognizing jury trial rights under the ITA, *Sherwin v. Arveson*, 96 Wn.2d 77, 83-84, 633 P.2d 1335 (1981) and *In re Detention of McLaughlin*, 100 Wn.2d 832, 844, 676 P.2d 444

(1984). They claim that former RCW 71.05.320(3)(c)(ii) denies that right to a jury trial because it could allow continued commitment without a jury trial in instances when the State carries its prima facie burden and the individual receives no evidentiary hearing because it fails to rebut the State's evidence. M.W. and W.D. distinguish similar civil standards like summary judgment, claiming the showing is less onerous on nonmoving parties and asserting such standards should not apply in situations where such significant deprivations of liberty are at stake.

We hold that former RCW 71.05.320(3)(c)(ii) does not violate an individual's right to a jury trial. We have never affirmatively recognized the right to a jury trial in a proceeding like this one. This civil commitment process is distinguishable from indefinite civil commitment schemes that require jury trials on initial commitment because the ITA involves only short periods of commitment and requires the State to file a new petition and carry a high burden of recommitment at the expiration of each period (here, every 180 days). *Cf. Quesnell*, 83 Wn.2d at 240. The ITA cases that M.W. and W.D. cite are distinguishable. *See Sherwin*, 96 Wn.2d at 84 (holding there is no constitutional right to a jury trial in the county of one's residence for 90-day commitment under the ITA); *McLaughlin*, 100 Wn.2d at 845 (holding that there is no right to a unanimous verdict in 90-day involuntary commitment proceedings).

But even assuming an individual subject to former RCW 71.05.320(3)(c)(ii) has a right to a jury in recommitment proceedings, the statute meets constitutional

standards. RCW 71.05.310 gives individuals the right to request a jury trial upon initial commitment and at evidentiary hearings for recommitment periods of 180 days. The fact that individuals subject to RCW 71.05.320(3)(c)(ii) must meet a threshold burden of production does not violate any constitutional right to a jury trial because the individual still has the opportunity to proceed to a jury trial to weigh its evidence against the State's; the individual need only first come forward with its evidence before the hearing is warranted. If the individual chooses not to respond to the State's evidence, this may constitute a waiver of the right to an evidentiary hearing with a jury, but it does not mean the statute denies the right to a jury. Therefore, the statutory right to a jury for proceedings under former RCW 71.05.320(3)(c)(ii) satisfies constitutional standards.

F.    Former RCW 71.05.320(3)(c)(ii) does not violate equal protection

Civil commitment statutes that treat classes of individuals differently are subject to the rational basis standard, which requires that all members of a class are treated alike, that there is a rational basis for distinguishing the class from others, and that the classification is rationally related to the law's purpose. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 609, 192 P.3d 306 (2008) (quoting *O'Hartigan v. Dep't of Pers.*, 118 Wn.2d 111, 122, 821 P.2d 44 (1991)).

The trial court commissioner held former RCW 71.05.320(3)(c)(ii) violates equal protection because it "carve[s] out an isolated subset of individuals subject to

recommitments under the general provisions of [former] RCW 71.05.320(3) for disparate treatment (indefinite commitment), without rational basis." Sealed Clerk's Papers at 341. M.W. and W.D. do not address this issue in their briefing.

The State claims that former RCW 71.05.320(3)(c)(ii) satisfies the "'relaxed and highly deferential'" rational basis standard for three reasons. Opening Br. of State at 41 (quoting *In re Det. of Turay*, 139 Wn.2d 379, 410, 986 P.2d 790 (1999)). First, all members of the class—individuals incompetent to stand trial for violent felony charges whom a judge has found committed a violent felony act—are subject to the same uniform procedure under former RCW 71.05.320(3)(c)(ii). Second, the legislature has compelling state interests in distinguishing certain violent mentally ill individuals from other mentally ill people subject to treatment. *See, e.g., In re Det. of Patterson*, 90 Wn.2d 144, 151, 579 P.2d 1335 (1978), *overruled on other grounds by McLaughlin*, 100 Wn.2d 832. Third, the statute is rationally related to those state interests because the distinction is based on "the severity of a person's criminal behavior" and helps keep those individuals and the public safe while they are at substantial risk of repeating violent acts. Opening Br. of State at 44-45. The State urges us to defer to the legislature's chosen means to promote legitimate governmental goals.

We agree that the classification in former RCW 71.05.320(3)(c)(ii) does not violate equal protection because it is rationally related to legitimate governmental

interests. As discussed above in Part B, the government has strong interests in protecting the public from violent acts of individuals and in ensuring proper treatment for mentally ill people. This statute singles out a particular set of individuals—those found incompetent to stand trial for violent felony charges when a judge makes a finding the person committed a violent felony act—and slightly modifies the recommitment process in a way that continues to ensure that the individual will receive an additional 180 days of involuntary treatment when the State proves by a clear, cogent, and convincing standard of proof that the individual still poses a substantial risk of repeating similar violent acts as a result of his mental illness. This process that is designed for a specific group is rationally related to the State's legitimate interests.

## IV. CONCLUSION

M.W. and W.D fail to meet their burden to prove that former RCW 71.05.320(3)(c)(ii) violates substantive or procedural due process, vagueness, equal protection, or the right to a jury trial. We reverse the superior court commissioner's ruling and uphold former RCW 71.05.320(3)(c)(ii) as constitutional.

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

González, J.

No. 90570-3

GORDON McCLOUD, J. (dissenting)—The trial court concluded that the

new civil commitment statute at issue in this case, former RCW 71.05.320(3)(c)(ii)

(2013), was unconstitutional. It ruled that the statute provided no procedure for

evaluating the parties' evidence, no burden of proof, and no standard of proof—so

it was unconstitutionally vague. It also ruled that the statute permitted continued

civil commitment based on allegations that the respondents "continue[] to suffer

from a mental disorder or developmental disability that results in a substantial

likelihood of committing acts similar to the charged criminal behavior," former

RCW 71.05.320(3)(c)(ii), but gave the respondents no appropriate means of testing

these allegations—so it deprived them of due process.

The State and the majority tacitly acknowledge these problems identified by

the trial court. The majority upholds the statute anyway. But it does so by

substantially rewriting it to incorporate the missing procedural safeguards.

1

That rewrite does make the statute less vague and does fill its gaps with procedures, evidentiary standards, and burdens of proof that satisfy the constitutional concerns. But this rewrite goes far beyond our court's authority to construe statutes: it actually revises one. Because this court lacks the power to usurp the legislature's role in this fashion, I respectfully dissent.

## ANALYSIS

Where legislative intent is clear, a court may construe a vague statute to save it from total invalidation. *State v. Martinez*, 85 Wn.2d 671, 675-80, 538 P.2d 521 (1975), *overruled on other grounds by State v. Smith*, 93 Wn.2d 329, 336 n.2, 610 P.2d 869 (1980); *see Skilling v. United States*, 561 U.S. 358, 405-06, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010). But a court may not, under the guise of "construing" the statute, "attempt[] a wholesale revision of it." *Martinez*, 85 Wn.2d at 680. That would usurp the legislature's role. *Id.*

The majority violates this rule by making no fewer than four separate substantive amendments to former RCW 71.05.320(3)(c)(ii) to answer the respondents' constitutional challenges. First, the majority changes the word "'proof'" to "evidence"[1] so as to lessen the burden on the committed person. The legislature's statute required the committed person to present "proof" of a changed

---

[1] Majority at 20, 28 (quoting former RCW 71.05.320(3)(c)(ii)).

condition to obtain a full hearing on whether commitment could continue; the majority's change lowers this burden slightly. It requires that person to "present[] [*evidence*] through an admissible expert opinion that the person's condition has so changed . . . that the mental disorder or developmental disability no longer presents a substantial likelihood of the person committing acts similar to the charged criminal behavior."[2] Second, the majority significantly increases the burden on the State. It accomplishes this increase by changing the phrase "prima facie evidence"[3] to "proof by clear, cogent, and convincing evidence"[4] so that the statute now requires the State to "present[] [*proof* by *clear, cogent, and convincing*] evidence that the person continues to suffer from a mental disorder or developmental disability that results in a substantial likelihood of committing acts similar to the charged criminal behavior."[5] Third, the majority takes procedural protections from a different part of the involuntary treatment act (ITA) and inserts them into the challenged statute. These insertions make former RCW 71.05.320(1) and (2) (2013)—which require the superior court to determine, in the context of a full evidentiary hearing on the State's

---

[2] Former RCW 71.05.320(3)(c)(ii); *see* majority at 20, 28.

[3] Former RCW 71.05.320(3)(c)(ii).

[4] Majority at 23.

[5] Former RCW 71.05.320(3)(c)(ii); *see* majority at 21-23, 28.

3

petition for continued confinement, whether a less restrictive treatment alternative is appropriate—applicable at the preliminary hearing stage under former RCW 71.05.320(3)(c)(ii) as well.[6] And finally, the majority borrows two additional procedural protections from another part of the ITA—it copies RCW 71.05.360(5)(b), which grants the right to counsel "before and at the probable cause hearing" that must occur "within seventy-two hours of the initial detention," and RCW 71.05.360(5)(e), which grants the right to refuse medications beginning 24 hours before that probable cause hearing—and inserts them into former RCW 71.05.320(3)(c)(ii).[7]

Having rewritten former RCW 71.05.320(3)(c)(ii) to incorporate these new procedural safeguards and evidentiary standards, the majority concludes that the statute is no longer vague. Majority at 28. The majority is certainly correct; this new version of the statute is far superior to the one our legislature wrote. The problem is that this new version is not merely a construction of the statute we were asked to evaluate—it is a wholesale rewrite. And it certainly doesn't reflect any clear legislative intent.

---

[6] Majority at 23.

[7] Majority at 24.

4

Indeed, the legislative intent underlying former RCW 71.05.320(3)(c)(ii) is far from clear. In this court, the State offered a contradictory explanation of that intent. On one hand, it argued that the amendment was intended to facilitate the continued civil commitment of people who *"no longer met the criteria* for . . . civil commitment" under the old regime. Opening Br. of State of Wash. Dep't of Health & Human Servs. at 6 (emphasis added). And it relied on our case law addressing the rights of sexually violent predators—persons this court has held to be more dangerous less likely to be cured, and therefore entitled to fewer procedural safeguards relative to other individuals with mental illness—to argue that former RCW 71.05.320(3)(c)(ii) satisfies constitutional standards. *See* majority at 12-13. On the other hand, the State argued that the amendment didn't change the criteria for civil commitment *at all. Id.* at 35-36 (arguing that the amendment creates no risk of erroneous civil commitment because if a person can't provide an expert opinion to contradict the State's petition, "then there is minimal likelihood that the [person] would be able to prevail in a full evidentiary hearing"). The majority embraces the latter argument, rewriting former RCW 71.05.320(3)(c)(ii) so that it "does not deny the procedural protections in other provisions of the ITA." Majority at 24.

But to the extent that we can glean any evidence of the legislature's intent from the legislative record, this evidence suggests that former RCW

5

71.05.320(3)(c)(ii) was designed to do exactly that—to diminish the procedural protections afforded individuals like the respondents. As the majority points out, the legislature enacted former RCW 71.05.320(3)(c)(ii) to address "a gap in the statutory system" into which "violent mentally ill individuals" fall when they are incompetent to stand trial. Majority at 14 (citing LAWS OF 2013, ch. 289, § 1). Because these individuals cannot be incarcerated or committed long term as "not guilty by reason of insanity," the State wanted to create a special statutory scheme to provide proper treatment for these individuals and protect public safety. *Id.* This legislative history suggests an intent to treat individuals like the respondents—those found by a court to have committed "acts . . . constitut[ing] a violent offense," RCW 71.05.280(3)(b), and also deemed incompetent to stand trial for those acts—more like insanity acquittees.

What the majority fails to acknowledge is that persons acquitted by reason of insanity may be civilly committed under a lower evidentiary standard: the State must prove that they are mentally ill and dangerous by only a preponderance of the evidence. *Jones v. United States*, 463 U.S. 354, 368, 103 S. Ct. 3034, 77 L. Ed. 2d 694 (1983); *State v. Wilcox*, 92 Wn.2d 610, 613-14, 600 P.2d 561 (1979). If the legislature actually intended to treat people such as the respondents more like insanity acquittees, then it would follow that the legislature intended to make it

*easier* for the State to continue their commitment. In other words, the legislature might well have intended former RCW 71.05.320(3)(c)(ii) to impose a *lower* evidentiary burden on the State than the clear, cogent, and convincing standard; to *relieve* the court of its responsibility to rule on less restrictive alternatives; and/or to *omit* any guarantee of counsel.

I agree with the majority that such legislative intentions would raise grave procedural due process concerns, particularly with respect to burdens of proof and evidentiary standards. Insanity acquittees may be committed under the lower preponderance standard for reasons that do not apply to individuals, like the respondents, deemed incompetent to stand trial. First, in an insanity acquittal, *the acquittee him- or herself* advances the argument that mental illness caused the dangerous behavior; second, the acquittee does so *while competent*; and third, a fact finder has already found, *beyond a reasonable doubt*, that the acquittee committed at least one criminal act because of mental illness. *Born v. Thompson*, 154 Wn.2d 749, 760-62, 117 P.3d 1098 (2005).[8] But we cannot address these constitutional

---

[8] Note that while none of the individuals subject to former RCW 71.05.320(3)(c)(ii) have been convicted of a crime beyond a reasonable doubt, all have been found by clear, cogent, and convincing evidence to have committed acts constituting a violent felony, a fact that distinguishes them from other civilly committed individuals. Former RCW 71.05.320(3)(c)(ii); RCW 71.05.280(3)(b); RCW 10.77.086(4).

problems by rewriting former RCW 71.05.320(3)(c)(ii) in apparent contravention of the legislature's intent.

## CONCLUSION

Procedural due process analysis is flexible by design. In the civil commitment context, it allows the legislature to tailor the procedures governing commitment and periodic review to the needs of specific populations. *See Jones*, 463 U.S. at 367-68 (insanity acquittees and other civil commitment candidates subject to different standards of proof because "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands'" (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972))). Thus, there are a variety of ways in which the legislature could address the issues posed by individuals whose mental illness makes them incompetent to stand trial for acts of violence. The key point here is that the legislature, not this court, has the authority to write the laws that do so.

The legislature enacted former RCW 71.05.320(3)(c)(ii). Like the trial court in this case, I conclude that former RCW 71.05.320(3)(c)(ii) is unconstitutionally vague because it vests virtually unlimited discretion in a reviewing court to determine whether an individual has provided sufficient "proof" to rebut the State's "prima facie evidence" that civil commitment should continue for another six

months without a full evidentiary hearing. And I agree with the majority that former RCW 71.05.320(3)(c)(ii) raises significant procedural due process concerns as written. But I would not save the statute by rewriting it. That is not the role of this court.

George McCloud, Jr.
Stephens, J.