**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
5/31/2022
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of:<br><br>W.S.,<br><br>                 Appellant. | DIVISION ONE<br><br>No. 82454-6-I<br><br>PUBLISHED OPINION |

DWYER, J. — W.S. appeals from a King County Superior Court order committing him to 14 days of involuntary mental health treatment. According to W.S., (1) the wrong county's prosecutor represented the petitioner because the process leading up to his commitment began in Stevens County, and (2) he was denied his constitutional right to a jury trial. Because W.S. has not established an entitlement to relief, we affirm.

I

W.S. was charged with malicious mischief after an incident in which he destroyed a number of items in his mother's home and wielded a chainsaw and a crowbar in front of her. Being fearful and concerned that W.S. did not appear lucid, his mother telephoned for police intervention. A superior court judge, presiding in Stevens County, requested that W.S. be evaluated by a designated crisis responder prior to being released from jail. The designated crisis responder evaluated W.S. at Providence Mount Carmel Hospital emergency room in Colville.

Based on his conversations with W.S., W.S.'s mother, and W.S.'s physician, the designated crisis responder petitioned to detain W.S. for an initial 120 hours of involuntary treatment. The initial petition was filed in King County Superior Court. Upon his release from jail supervision, W.S. was transported from the Providence Mount Carmel Hospital emergency room to Fairfax Hospital in King County.

Within 120 hours of his initial detention, W.S.'s treatment providers at Fairfax Hospital filed a petition for 14 days of involuntary treatment. The petition was filed in King County Superior Court. A probable cause hearing was held and the superior court determined by a preponderance of the evidence that petitioner had proved that W.S., as a result of a mental disorder, presented a likelihood of serious harm to others and to the property of others. Accordingly, the superior court ordered W.S. to be detained for up to 14 days of involuntary treatment. The superior court advised W.S. that if the hospital filed another petition to detain him beyond 14 days, he could demand a jury trial. W.S. responded, "I want a jury trial right now, please." The superior court ignored this request.

W.S. appeals.

II

W.S. contends that "the wrong county prosecuted W.S."[1] This is so, according to W.S., because the proceeding was initiated in Stevens County. We disagree.

---

[1] Br. of Appellant at 4.

No. 82454-6-I/3

The responsibility for representing the individuals or agencies petitioning for mental health commitment or detention is designated by statute:

> *In any judicial proceeding for involuntary commitment* or detention except under RCW 71.05.201, or in any proceeding challenging involuntary commitment or detention, *the prosecuting attorney for the county in which the proceeding was initiated shall represent the individuals or agencies petitioning for commitment or detention* and shall defend all challenges to such commitment or detention, except that the attorney general shall represent and provide legal services and advice to state hospitals or institutions with regard to all provisions of and proceedings under this chapter other than proceedings initiated by such hospitals and institutions seeking fourteen day detention.

RCW 71.05.130 (emphasis added).

W.S. contends that the judicial proceeding for the 14-day involuntary commitment was initiated when the judge presiding in Stevens County requested that a designated crisis responder evaluate W.S. prior to his release from jail. According to W.S., "'initiated'" is defined as "'to cause or facilitate the beginning of'"[2] and, but for the judge's request of the designated crisis responder, W.S. would not have been initially detained, moved to a hospital in King County, and evaluated there—all of which resulted in the filing of the petition for a 14-day period of involuntary commitment and, after a probable cause hearing, the entry of an order committing W.S. to up to 14 days of involuntary treatment.

However, the relevant statute provides that a probable cause hearing resulting in a court order for up to 14 days of involuntary treatment can only be initiated by the filing of a petition seeking an order authorizing the 14-day detention. RCW 71.05.240 ("*If a petition is filed for fourteen day involuntary*

---

[2] Br. of Appellant at 6 (quoting MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/initiate#h1 (last visited Aug. 20, 2021)).

3

No. 82454-6-I/4

*treatment* or ninety days of less restrictive alternative treatment, the court shall hold a probable cause hearing within one hundred twenty hours of the initial detention of such person as determined in RCW 71.05.180, or at a time determined under RCW 71.05.148." (emphasis added)). Thus, had the petition for a 14-day commitment not been filed, W.S. would have been released within 120 hours. RCW 71.05.180. Accordingly, the judicial proceeding at issue was initiated when the mental health professionals at Fairfax Hospital, in King County, filed a petition seeking W.S.'s detention for up to 14 days of involuntary treatment.

At oral argument in this court, W.S.'s counsel asserted that, although W.S. was detained at Fairfax Hospital in King County when the petition was filed and when the probable cause hearing was held and although Fairfax Hospital was the petitioner, the prosecutor for Stevens County could have represented Fairfax Hospital without significant inconvenience, as the proceeding took place by way of a video conference. According to W.S., this is evidence that the word "initiated" in RCW 71.05.130 refers to either the time at which W.S. was referred for evaluation or when he was first evaluated, both of which occurred in Stevens County. However, RCW 71.05.130 was last amended in 2015. In 2015, commitment hearings under the involuntary treatment act required the physical presence of respondents. In re Det. of J.N., 200 Wn. App. 279, 290, 402 P.3d 380 (2017).[3] Video hearings could only be held with the consent of the

---

[3] The legislature has subsequently amended the involuntary treatment act to remove the requirement that respondents be physically present at the probable cause hearing. RCW 71.05.310.

respondent.   This simple fact completely undercuts W.S.'s statutory construction argument.  The prosecutor for King County was properly responsible for representing the petitioner.

III

W.S. next contends that his state constitutional right to a jury trial was violated when his request for a jury trial was ignored.  As no such right exists at a probable cause hearing, we disagree.

We review a claim of a constitutional right to a jury trial de novo.  In re Det. of C.B., 9 Wn. App. 2d 179, 182, 443 P.3d 811 (2019).  The Washington Constitution provides that "[t]he right of trial by jury shall remain inviolate."  WASH. CONST. art. I, § 21.  To determine whether that provision grants the right to a jury trial in certain circumstances, we apply a two-part test:

> First, we determine the scope of the right to a jury trial as it existed at the time of our founding in 1889; second, we determine if the type of action at issue is similar to one that would include the right to a jury trial at that time.

In re Det. of M.W., 185 Wn.2d 633, 662, 374 P.3d 1123 (2016).

We have previously engaged in a thorough analysis of whether the right to a jury trial exists in this circumstance and determined that

> there was no proceeding in 1889 to which the jury trial right attached akin to the proceeding referenced as a probable cause hearing in RCW 71.05.240.  Accordingly, the Washington Constitution does not require that a jury be seated to determine the issues presented in a probable cause hearing commenced pursuant to RCW 71.05.240.

No. 82454-6-I/6

In re Det. of S.E., 199 Wn. App. 609, 627-28, 400 P.3d 1271 (2017); accord In re Det. of N.G., __ Wn. App. 2d __, 503 P.3d 1, 6 (2022); In re Det. of T.C., 11 Wn. App. 2d 51, 59-60, 450 P.3d 1230 (2019).

Furthermore, we have previously determined that there is no state constitutional right to a jury trial applicable to proceedings on a petition for a longer 90-day period of involuntary treatment. C.B., 9 Wn. App. 2d at 184. Our Supreme Court has also held that no constitutional right to a jury trial is applicable to a 180-day recommitment hearing after dismissal of serious felony charges based on a finding that the defendant was not competent to stand trial. M.W., 185 Wn.2d at 663.

This question of law is now well-settled. The superior court did not err. Affirmed.

WE CONCUR: