IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | No. 81758-2-I |
| P.P.-J., | DIVISION ONE |
| Appellant. | UNPUBLISHED OPINION |

SMITH, J. — P.P.-J. appeals the trial court's 14-day involuntary commitment order. He contends that he was deprived of his constitutional right to a jury trial at the probable cause hearing. Since the trial court appropriately applied established precedent that there is no right to a jury trial in this type of proceeding, we affirm.

FACTS

In July 2020, several individuals close to P.P.-J., including his mother, former significant other, property manager, and girlfriend, all reported that P.P.-J. had been acting erratically in the previous weeks. As a result, the Downtown Emergency Service Center performed a crisis assessment on P.P.-J. and found that he presented in a manic and altered mental state. On July 27, Seattle police responded to a call at P.P.-J.'s residence. They reported significant property damage, including the removal of cabinets, drywall, and other furnishings that were thrown into the apartment dumpster. The designated crisis responder (DCR) estimated the total damages at P.P.-J.'s apartment to exceed $10,000 during their assessment on or about the evening of July 26. At the request of the DCR, a King County Superior Court commissioner issued an order on July 30, 2020, to detain P.P.-J. for up to 72 hours.

A probable cause hearing for a 14-day detention was held on August 11. P.P.-J. was advised on the record that he would not be heard by a jury, but would retain that right for future hearings relating to further detention in accordance with RCW 71.05.310. The court found by a preponderance of the evidence that P.P.-J. presented a likelihood of serious harm to others and others' property, and that he was gravely disabled under prong (b) of RCW 71.05.020(23). P.P.-J. was involuntarily committed to Harborview Medical Center on July 31, 2020, and released on August 19, 2020.

ANALYSIS

P.P.-J. contends that the court deprived him of his constitutional right to a jury trial at his probable cause hearing. He asks this court to disregard precedent that has established that a jury trial is not required at 14-day involuntary commitment hearings. We disagree.[1]

We review issues of constitutional interpretation de novo. In re Det. of S.E., 199 Wn. App. 609, 614, 400 P.3d 1271 (2017). The Washington Constitution states that "[t]he right of trial by jury shall remain inviolate." WASH. CONST. art. I, § 21. RCW 71.05.240(4)(a) provides for a probable cause hearing without a jury to determine

---

[1] As a preliminary issue, this case is not moot. Although P.P.-J. has already been released, a reversal of the ruling would restrict this commitment from being included as evidence in future civil or criminal proceedings. This action would provide appropriate redress for the appellant, negating mootness. See In re Det. of B.H., No. 81128-2-I, slip op. at 3 (Wash. Ct. App. June 21, 2021), https://www.courts.wa.gov/opinions/pdf/811282.pdf.

Additionally, P.P.-J. has asked this court to consider his appeal despite his failure to raise the issue below. Although under RAP 2.5, this court can refuse to review any claim of error on appeal that was not raised at the trial court level, we address it because it raises an important constitutional issue. See State v. Mayfield, 192 Wn.2d 871, 880 n.4, 434 P.3d 58 (2019) (holding that a constitutional argument not raised at the trial level can be heard "because it is an important, unresolved question of law").

whether a person's mental disorder warrants a 14-day involuntary commitment.[2]  We have previously held that RCW 71.05.240(4)(a) does not violate an individual's right to a jury trial because:

> This civil commitment process is distinguishable from indefinite civil commitment schemes that require jury trials on initial commitment because the [involuntary treatment act, chapter 71.05 RCW,] involves only short periods of commitment and requires the State to file a new petition and carry a high burden of recommitment at the expiration of each period.

In re Det. of M.W., 185 Wn.2d 633, 663, 374 P.3d 1123 (2016).

In reviewing the case on its merits, we reach the same conclusion as S.E.  We look to a two-part test in reviewing the statute for compliance with article 1, section 21 of the Washington Constitution.  S.E., 199 Wn. App. at 614-15.  "'First, we determine the scope of the right to a jury trial as it existed at the time of our founding in 1889; second, we determine if the type of action at issue is similar to one that would include the right to a jury trial at that time.'"  S.E., 199 Wn. App. at 615 (quoting M.W., 185 Wn.2d at 662).  The appellant bears the burden of proving that the proceeding is the type of action for which the constitution would have guaranteed the right to a jury trial.

First, at the time that our constitution was passed in 1889, the right to a jury trial was attached to a trial before the probate court, at which a party would be declared

---

[2] RCW 71.05.240(4)(a) provides:
Subject to (b) of this subsection, at the conclusion of the probable cause hearing, if the court finds by a preponderance of the evidence that such person, as the result of a behavioral health disorder, presents a likelihood of serious harm, or is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed fourteen days in a facility licensed or certified to provide treatment by the department or under RCW 71.05.745.

"insane" or not in a single contested trial. S.E., 199 Wn. App. at 617. While awaiting trial, the individual could be detained for up to 60 days or more if a judge determines the individual to be unsafe to be at large. S.E., 199 Wn. App. at 619-20. If declared insane, the person was to be committed indefinitely. S.E., 199 Wn. App. at 617. No proceedings seeking to temporarily commit a person suffering from mental illness existed in 1889. S.E., 199 Wn. App. at 617. Thus, there was no right to a jury trial for such proceedings at the time of our founding. S.E., 199 Wn. App. at 617.[3]

Second, we conclude that probable cause hearings for involuntary commitment are not analogous to the type of indefinite commitment proceedings afforded a jury trial in 1889. Instead, the pretrial 60-day detention is most analogous to the 14-day detention at issue here, indicating that at our founding, a jury trial right would not have attached to this type of proceeding.

P.P.-J. also notes that involuntary commitment temporarily suspends a person's right to possess a firearm and exposes them to possible criminal penalties. While this is true, we have previously held that there is no jury trial right in other contexts where a person's right to possess a firearm is restricted. See Blackmon v. Blackmon, 155 Wn. App. 715, 720-23, 230 P.3d 233 (2010) (holding that there is no right to a jury trial when a person petitions the court for a domestic violence protection order, even though firearms are to be surrendered). Firearms are routinely surrendered at the time of voluntary or involuntary commitment and can be retrieved after "sanity" has been

---

[3] "Indeed, there was no territorial proceeding akin to the probable cause hearing provided for in RCW 71.05.240." S.E., 199 Wn. App. at 617.

established pursuant to RCW 9.41.047(1)-(3).  Therefore, we are not persuaded that a jury right should attach.[4]

We conclude that P.P.-J. has failed to prove that the proceeding is the type of action for which the right to a jury trial is guaranteed under the Washington Constitution.

We affirm.

WE CONCUR:

---

[4] Furthermore, on the notion of lost liberties, this court would like to respond to the lower court's commentary that five witnesses is an overlitigation on the side of the petitioner.  As this is a case concerning the detention of an individual for two weeks where there is definite loss of liberty, it is the duty of the court to do its due diligence in assessing all available evidence on the matter.  It is our sincere belief that in this situation, more evidence, not less, should be the court's goal in the interest of justice.