# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 58800-5-II |
| C.A.A., | |
| Appellant. | PUBLISHED OPINION |

PRICE, J. — C.A. threatened an employee of a grocery store, resulting in a charge for the crime of felony harassment. But C.A. suffered from mental illness and was deemed to be incompetent to stand trial and unlikely to be restored. Pursuant to the process for felony-based commitment under the Involuntary Treatment Act (ITA), chapter 71.05 RCW, the superior court dismissed the charge and permitted C.A. to be held in the county jail for up to 14 days prior to transport to Western State Hospital (WSH). Soon thereafter, the superior court ordered C.A. to be committed for 180 days of involuntary treatment. The superior court found that commitment was justified under the ITA's felony-based commitment procedure, and it also found, separately, that C.A. was gravely disabled.

C.A. appeals the superior court's order, arguing that (1) the State failed to prove C.A.'s felony-based commitment because the State was required by the First Amendment of the United States Constitution to prove an individual's mental state when the underlying crime involves speech, and (2) the superior court did not have any authority to order C.A. to be held in the county jail for up to 14 days after dismissing the criminal charge against him.

We hold that the First Amendment does not require the State to prove C.A.'s mental state for his felony-based commitment. We also hold that the superior court had the authority to allow WSH 14 days to comply with its commitment order. Accordingly, we affirm.[1]

FACTS

In October 2022, C.A. was lying on the ground in front of the entrance to a grocery store, obstructing people who were heading out to the parking lot. A security guard for the grocery store asked C.A. to move, but C.A. ignored him. Unsure what C.A. would do next, the security guard took out pepper spray from his pocket. Seeing the pepper spray, C.A. accused the security guard of pointing a weapon at him and said several times, "You . . . just wait, I'm going to show you." Verbatim Rep. of Proc. at 32.

C.A. then stood up, took out what appeared to be a gun and pointed it at the security guard. Fearing he was about to be killed, the security guard drew his own gun while continuing to hold the pepper spray. Soon thereafter, the security guard pepper sprayed C.A., causing C.A. to retreat. Law enforcement later found C.A. and placed him under arrest.

Based on the threats made to the security guard, the State charged C.A. with felony harassment. C.A. later underwent a competency evaluation to determine whether he was competent to stand trial. The resulting report stated that more likely than not, C.A. lacked the capacity to assist in his own defense and that the chances of restoration would improve if C.A. could receive involuntary mental health treatment. As noted in the report, C.A. had had a history of involuntary mental health treatment (including 15 or 16 prior admissions to WSH over a nearly

---

[1] Because C.A. does not appeal the superior court's determination that he was also gravely disabled, we do not further address it.

twenty-year period), a lack of insight into his mental illness, and an unwillingness to accept medication.

After a delay of several months without C.A. being admitted to competency restoration, the superior court entered an "Order Dismissing Felony Charges and Directing Civil Commitment Evaluation" pursuant to the felony-based involuntary commitment process in the ITA. As part of its order, the superior court found that C.A. was incompetent to stand trial pursuant to RCW 10.77.010 and 10.77.050 and that it was unlikely that C.A.'s competency would be restored. The superior court dismissed the charge against C.A and ordered him committed to WSH for up to 120 hours for the purposes of being evaluated for a civil commitment petition. The superior court also ordered that:

> The defendant shall be held in the jail/detention facility for a maximum of 14 days pending admission to the state hospital for civil commitment evaluation. *The defendant shall be released if the state hospital has not offered admission within 14 days.* The defendant shall be transported to the state hospital by the jail/detention facility.

Clerk's Papers at 37 (emphasis added).

Two weeks later, C.A. was admitted to WSH. Following C.A.'s admission, two WSH mental health providers filed a petition for a 180-day civil commitment (WSH's petition). WSH's petition alleged that (1) C.A. committed acts constituting felony harassment and C.A. presented a substantial likelihood of repeating similar acts as a result of a behavioral health disorder; and (2) C.A. was gravely disabled as a result of a behavioral health disorder.

The superior court held a hearing on WSH's petition. WSH psychologist, Dr. Archer, testified on behalf of the petition. According to Dr. Archer, C.A. experiences schizoaffective disorder, bipolar type, as well as substance use disorder. Dr. Archer further explained that C.A.'s

disorders result in a lack of cognitive and volitional control. She also described occasions when C.A. was placed in seclusion due to unsafe interactions causing danger to others and himself.

Testifying about the alleged grounds for commitment, Dr. Archer said that as a result of his behavioral health disorder and escalating loss of volitional control, C.A. presented a substantial likelihood of repeating acts similar to the charged criminal behavior. She also testified that C.A. was gravely disabled because he was unable to meet his basic health and safety needs due to his behavioral health disorder, which would place him at risk of serious physical harm.

Following the hearing, the superior court entered written findings of fact and conclusions of law. The superior court found, in part, that the testimony established that C.A. committed acts constituting the crime of felony harassment and that C.A. presented a substantial likelihood of repeating acts similar to the charged criminal behavior. Thus, the superior court ordered C.A. to receive up to 180 days of intensive inpatient treatment.

C.A. appeals the superior court's commitment order.

ANALYSIS

I. C.A. FAILS TO SHOW THAT THE FIRST AMENDMENT APPLIES TO FELONY-BASED COMMITMENT

C.A. first argues that the State failed to establish his felony-based commitment under the ITA because the State did not prove that C.A. was subjectively aware of a substantial risk that his words would be viewed as threatening violence. C.A.'s argument is rooted in his contention that the First Amendment requires the State to prove the mens rea element of felony harassment for a felony-based commitment. And because the ITA, specifically, former RCW 71.05.280(3)(a) (2022), provides that the mens rea element need not be proved in felony-based

commitments, C.A contends the statute violates the First Amendment in the context of felony harassment.[2]

We disagree.

A. STANDARD OF REVIEW

We generally presume statutes are constitutional. *In re Det. of M.W.*, 185 Wn.2d 633, 647, 374 P.3d 1123 (2016). The party challenging a statute bears the burden of proving it is unconstitutional beyond a reasonable doubt. *State v. Fraser*, 199 Wn.2d 465, 475, 509 P.3d 282 (2022). We review the constitutionality of a statute de novo. *M.W.*, 185 Wn.2d at 647.

Parties may challenge the constitutionality of a statute with either an as-applied challenge or a facial challenge. *Id.* An as-applied challenge is defined by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional. *City of Redmond v. Moore*, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004). When a statute is held to be unconstitutional based on an as-applied challenge, future application of the statute in a similar context is prohibited; however, the statute is not completely invalidated. *Id.* at 669. When there are no set of circumstances in which the statute can be constitutionally applied, the statute can be successfully facially challenged. *Id.*

B. FELONY-BASED COMMITMENT UNDER THE ITA AND FELONY HARASSMENT

The ITA allows a person to be civilly committed for up to 180 days under certain alternatives, including an alternative referred to as a "felony-based commitment." RCW

---

[2] Former RCW 71.05.280(3)(a) was in effect at the time C.A. committed acts constituting felony harassment. We apply the version of the statute in effect at the time of the offense.

71.05.320(2); *In re Det. of M.L.H.*, 16 Wn. App. 2d 431, 438, 480 P.3d 518 (2021) (characterizing the procedures in former RCW 71.05.280(3) as a "felony-based commitment"). A felony-based commitment may apply if a person has been accused of a felony, is incompetent to stand trial, and is unlikely to be restored to competency. *See M.L.H.*, 16 Wn. App. 2d at 438. This alternative requires the State to prove (1) the person has been found incompetent, (2) the criminal charges have been dismissed, (3) the person has committed acts constituting a felony, and (4) the person presents a substantial likelihood of repeating similar acts as a result of a behavioral health disorder. *See* former RCW 71.05.280(3).

The statute does not require the State to prove every element of the underlying felony, just "acts constituting a felony," and it explicitly relieves the State from having to prove any mens rea element. Former RCW 71.05.280(3)(a). The relevant provision states:

> (3) Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.086(4), and has committed *acts constituting a felony*, and as a result of a behavioral health disorder, presents a substantial likelihood of repeating similar acts.
>
> (a) In any proceeding pursuant to this subsection it shall *not* be necessary to show *intent, willfulness, or state of mind as an element of the crime*.

Former RCW 71.05.280 (emphasis added). The State has the burden of proving that the person " 'committed acts constituting a felony' " by clear, cogent, and convincing evidence. *In re Det. of A.M.*, 17 Wn. App. 2d 321, 331, 487 P.3d 531 (2021) (quoting *State v. M.R.C.*, 98 Wn. App. 52, 57, 989 P.2d 93 (1999)).

In this case, the underlying felony at issue is felony harassment. The crime of harassment is committed when the defendant knowingly threatens to "cause bodily injury immediately or in the future to the person threatened" and places "the person threatened in reasonable fear that the

threat will be carried out" by words or conduct. Former RCW 9A.46.020(1)(a)(i), (b) (2011). Harassment is elevated to a class C felony if it involves "threatening to kill the person threatened or any other person." Former RCW 9A.46.020(2)(b)(ii).

Because of free speech concerns, only true threats may be punished for the crime of felony harassment. *See State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013) (explaining that courts "interpret statutes criminalizing threatening language as proscribing only unprotected true threats"). A true threat is a " 'serious threat, not one said in jest, idle talk, or political argument . . . .' " *State v. Trey M.*, 186 Wn.2d 884, 894, 383 P.3d 474 (2016) (quoting *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)). Thus, in order to ensure criminal liability is limited to only true threats, historically our Supreme Court has required proof that the " 'statement [was] made in a context or under such circumstances wherein a *reasonable person* would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person. ' " *Allen*, 176 Wn.2d at 626 (emphasis added) (alteration in original) (internal quotation marks omitted) (quoting *Kilburn*, 151 Wn.2d at 43). This mens rea for true threats has been labeled "simple negligence." *State v. Calloway*, ___ Wn. App. 2d ___, 550 P.3d 77 (2024).

C. *COUNTERMAN*—IMPOSITION OF SUBJECTIVE MENS REA REQUIREMENT FOR TRUE THREATS

In 2023, the United States Supreme Court announced a new mens rea standard for true threats. *Counterman v. Colorado*, 600 U.S. 66, 69, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). In *Counterman*, a defendant was convicted under a Colorado statute criminalizing communication with another person that " 'would [and does] cause a reasonable person to suffer serious emotional distress . . . .' " 600 U.S. at 70 (quoting Colo. Rev. Stat. § 18-3-602(1)(c)

(2022)). The defendant argued that the Colorado statute violated the First Amendment. *See id.* at 71-73. He contended that in a true-threats' prosecution, the First Amendment required that the State prove some sort of mens rea requirement, showing that he had subjective awareness of the threatening nature of his communications. *Id.* at 72-73.

The Court agreed and held that the First Amendment requires that the State must prove that a defendant accused of a true threat has, at a minimum, a mens rea of recklessness as to the effects of their words. *Id.* at 69. The Court explained that this requires the State to show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. *Id.*

The Court acknowledged that such a standard will have the effect of shielding some true threats from liability. *Id.* at 75. Nevertheless, the Court explained that the imposition of a subjective mens rea of recklessness is necessary to lessen the chill of protected nonthreatening expression without sacrificing the many benefits of enforcing laws against true threats. *Id.* at 82. The concern is with self-censorship:

> A speaker may be unsure about the side of a line on which his speech falls. Or he may worry that the legal system will err, and count speech that is permissible as instead not. Or he may simply be concerned about the expense of becoming entangled in the legal system. The result is "self-censorship" of speech that could not be proscribed—a "cautious and restrictive exercise" of First Amendment freedoms. *Gertz*, 418 U.S. at 340, 94 S. Ct. 2997. And an important tool to prevent that outcome—to stop people from steering "wide[ ] of the unlawful zone"—is to condition liability on the State's showing of a culpable mental state. *Speiser v. Randall*, 357 U.S. 513, 526, 78 S. Ct. 1332, 2 L. Ed. 2d 1460 (1958).

*Id.* at 75 (alteration in original) (citation omitted).

Given that Washington previously used a simple negligence standard, not a recklessness mens rea standard for true threats, *Counterman* has required an adjustment of previous

Washington law on felony harassment. Recently, in *Calloway*, we observed that Washington's pre-*Counterman* mens rea standard contravenes the First Amendment because it does not conform with *Counterman*. *Calloway*, 550 P.3d at 86. Rather than focusing on the hypothetical reasonable person, we noted that in a prosecution for harassment, the State must now match the demands of *Counterman* and prove that *the defendant* consciously disregarded a substantial risk that the communications would be viewed as threatening violence. *Id.*

D.  *COUNTERMAN* IS INAPPLICABLE TO C.A.'S FELONY-BASED COMMITMENT

Here, C.A. argues that *Counterman* applies to the ITA. He asserts that the State failed to establish his felony-based commitment because the State was required to prove the *Counterman's* new mens rea standard—that C.A. was actually subjectively aware of a substantial risk that his words would be viewed as threatening violence. And because former RCW 71.05.280(3)(a) relieves the State of proving any mens rea element in a felony-based commitment, part of his argument requires contending that the statute violates the First Amendment in the context of felony harassment. Thus, C.A. appears to be making an as-applied challenge to former RCW 71.05.280(3)(a).[3]

C.A.'s argument rises or falls on whether *Counterman's* holding—that the State must prove a defendant had some understanding of his statements' threatening character and the effect on the listener—is applicable to ITA felony-based commitments involving felony harassment.

---

[3] C.A. does not expressly frame his argument as an as-applied constitutional challenge to the statute. But because the plain language of former RCW 71.05.280(3)(a) clearly relieves the State of proving any mens rea of the underlying felony, such a challenge is required for C.A.'s claim to be successful.

In support of his position that *Counterman's* holding should be applied here, C.A. relies on our Supreme Court's decision in *In re Detention of Danforth*. 173 Wn.2d 59, 264 P.3d 783 (2011) (plurality opinion). There, in a divided opinion, the plurality upheld the commitment of Danforth under the "Sexually Violent Predator Act" (SVPA), chapter 71.09 RCW, who had disclosed to law enforcement that he might reoffend if he was not stopped. 173 Wn.2d at 60-63, 75. Although the lead opinion took the position that Danforth's statements did not implicate the First Amendment because the SVPA was not a criminal statute, the six dissenting and concurring justices disagreed with this aspect of the lead opinion and noted that the First Amendment protects speakers from both criminal and civil sanctions for their statements. *Id.* at 71-72, 76-77, 87-88.

Pointing to the position of the six dissenting and concurring *Danforth* justices, C.A. contends *Counterman's* holding should be extended to the civil context of the ITA. And by obviating the need for this proof, C.A. contends former RCW 71.05.280(3)(a) violates the First Amendment.[4]

Before addressing C.A.'s arguments about *Counterman* and *Danforth*, we briefly turn back to former RCW 71.05.280(3)(a) and its relieving of the State's obligation to prove the mens rea element of an underlying felony. In *M.L.H.*, we explained that this feature of felony-based commitment makes sense in the context of the ITA. 16 Wn. App. 2d at 439. There, M.L.H.

---

[4] As noted above, former RCW 71.05.280(3)(a) says, "In any proceeding pursuant to this subsection it shall *not* be necessary to show *intent, willfulness, or state of mind as an element of the crime*." (Emphasis added.)

argued that the State had to prove that he *intended* to commit a crime to show that he committed "acts constituting" residential burglary. *Id.* at 437.

We rejected M.L.H.'s argument and held that the felony-based commitment statute did not require proof of the underlying crime's mens rea element in order to prove acts constituting a felony based on the plain and unambiguous language of the statute. *Id.* at 439. We quoted our Supreme Court when it addressed this aspect of felony-based commitment by stating:

> "The statute does not, of course, presume that persons in respondent's class have committed felonies. It only provides for commitment of mentally ill persons who have committed acts which, apart from state of mind, constituted felonies, that is, are seriously antisocial acts. *The issue of state of mind, or blameworthiness, is irrelevant*. It is the nature of the acts themselves as presenting a danger to society, and not the state of mind of the actor, which is relevant."

*Id.* at 439 (quoting *In re Det. of Patterson,* 90 Wn.2d 144, 154, 579 P.2d 1335 (1978), *overruled on other grounds by In re Det. of McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984)). Consistent with these words from our Supreme Court, we reasoned that imposing a mens rea requirement "could render it impossible" to obtain a felony-based civil commitment where a person is unable to form criminal intent because of their mental illness. *Id.* Such an outcome, we said, would be inconsistent with the purpose of the ITA, which seeks " '[t]o protect the health and safety of persons suffering from mental disorders . . . and to protect public safety . . . .' " *Id.* (first alteration in original) (quoting former RCW 71.05.010(1)(a) (2016)).

In the face of these prudent reasons behind former RCW 71.05.280(3)(a), we are unpersuaded that *Counterman* applies to felony-based commitments. First, *Counterman* concerned a conviction under a criminal statute, and the opinion does not discuss any application to the civil setting. *See Counterman*, 600 U.S. at 69. Indeed, two federal district courts have

11

recently declined to extend *Counterman* to a civil setting. *See Sealed Plaintiff 1 v. Front*, No. 3:22-cv-670, 2024 WL 1395477, at \*29-30 (E.D. Va. Mar. 31, 2024) (federal district court found *Counterman* inapplicable to civil lawsuit because there was no criminal statute at issue); *see also Boquist v. Courtney*, 682 F. Supp. 3d 957, 969 n.10 (D. Or. 2023) (noting that "because there is no criminal statute at issue here, [the court does] not find [*Counterman*] applicable").

But more importantly, the rationale behind *Counterman's* holding has no application to the ITA context. *Counterman* couched its imposition of a mens rea requirement as being rooted in the concern for self-censorship in the face of potential punishment or sanction for speech. *Counterman*, 600 U.S. at 75. But the ITA context involves neither punishment nor the risk of self-censorship.

As noted in *M.L.H.*, the ITA is not premised on punishment; rather, it is based on protecting " 'the health and safety of persons suffering from mental disorders . . . and to protect public safety . . . .' " 16 Wn. App. 2d at 439 (quoting former RCW 71.05.010(1)(a) (2016)).

Nor is self-censorship implicated by the ITA. Self-censorship presupposes that an individual is capable of making deliberate decisions, including intentionally choosing to curb the exercise of their freedoms. *See Counterman*, 600 U.S. at 75 ("A speaker may be unsure about the side of a line on which his speech falls. Or he may worry that the legal system will err, and count speech that is permissible as instead not. Or he may simply be concerned about the expense of becoming entangled in the legal system."). It is self-evident that the ITA is designed for people who are limited in their cognitive abilities and decision-making skills—a candidate for felony-based commitment would simply not be capable of the level of contemplation that drove *Counterman's* concern for self-censorship. *See M.L.H.*, 16 Wn. App. 2d at 439 (observing

that "imposing such a requirement could render it impossible to obtain a felony-based civil commitment in the case of a respondent who, because of their mental illness, is unable to form criminal intent"). Thus, *Counterman's* rationale for imposing a heightened mens rea requirement for true threats is completely absent with respect to the ITA's felony-based commitment.

Although it is true that in *Danforth*, six members of our Supreme Court observed that the First Amendment applies to protect a speaker in the context of the SVPA, there are key differences between the SVPA and the ITA. *See* 173 Wn.2d at 88. Considerations involved with the SVPA—that is, whether a person qualifies as a sexually violent predator—are very different than whether a person should be committed for treatment of behavioral health disorders under the ITA. With the SVPA, the legislature has found that there is a "small but extremely dangerous group" of people with "personality disorders and/or mental abnormalities" that "render them likely to engage in sexually violent behavior." RCW 71.09.010. Because the likelihood of engaging in repeated acts of sexual violence is high, long-term civil commitment may be appropriate for persons who fall into that group. RCW 71.09.010.

By contrast, the ITA is focused on broadly providing treatment to all those who are greatly affected by behavioral health disorders, not merely a "small but extremely dangerous group" subset. *Compare* RCW 71.05.010(1)(a) ("The provisions of this chapter . . . are intended by the legislature . . . [t]o protect the health and safety of persons suffering from behavioral health disorders and to protect public safety through use of the parens patriae and police powers of the state . . . [t]o provide . . . appropriate treatment of persons with serious behavioral health disorders.") *with* RCW 71.09.010 ("The legislature finds that a small but extremely dangerous group of sexually violent predators exist . . . ."). In fact, the legislature has expressly stated that

13

the ITA treatment model is *not* the same as the long-term treatment intended for sexually violent predators under the SVPA. *See* RCW 71.09.010 ("The legislature further finds that . . . the treatment modalities for this [SVPA] population are *very different* than the traditional treatment modalities for people appropriate for commitment under the [ITA]."[5] (Emphasis added.))

If anything, *Counterman* actually reinforces the legislature's wisdom to relieve the State of the obligation to prove any mens rea through former RCW 71.05.280(3)(a). Prior to *Counterman*, the State only had to prove a mens rea of simple negligence as to the effect of their words; that is, that a *reasonable person* would foresee that the statement would be interpreted as a serious expression of intent to inflict violence. *Calloway*, 550 P.3d at 85; *Allen*, 176 Wn.2d at 626. Arguably, by focusing on a hypothetical reasonable person, meeting the burden of this standard would have at least been possible for the State even if the particular defendant was incompetent. But now, post-*Counterman*, considering that the mens rea for a true threat is focused on the actual *subjective* state of mind of the defendant, the State would have a far less achievable burden when the defendant suffers from the cognitive limitations of mental illness.

---

[5] The differences between the SVPA and the ITA can also be seen in the durations of commitment and the associated burdens. As explained in *M.W.*,

> Unlike civil commitment for sexually violent predators, which provides a single indefinite term of commitment with the possibility to petition for earlier release, the ITA allows only short periods of confinement (no more than 180 days). At the expiration of each period, the burden is on the State to bring a new petition for an additional commitment period. If the State declines to do so or does not meet its burden, the individual is automatically released.

185 Wn.2d at 651-52. The procedures for potential release of an individual committed under the SVPA are far more complicated. *See generally State v. McCuistion,* 174 Wn.2d 369, 379-81, 275 P.3d 1092 (2012) (discussing procedures under the SVPA).

*See M.L.H.*, 16 Wn. App. 2d at 439 (explaining that proving actual intent to commit a crime could be "impossible" "in the case of a respondent who, because of their mental illness, is unable to form criminal intent").

In sum, we conclude that *Counterman*'s holding—that true threats require the State to prove a mens rea of at least recklessness about the threatening nature of their statements—is inapplicable to felony-based commitment under the ITA. Accordingly, we hold that C.A. has failed to meet his burden of demonstrating that former RCW 71.05.280(3)(a) is unconstitutional as-applied in the context of felony harassment.

As a result, C.A.'s felony-based commitment is supported by the evidence.[6] Thus, we reject C.A.'s challenge to the superior court's order committing C.A. to 180 days of treatment.

## II. THE SUPERIOR COURT'S AUTHORITY TO HOLD C.A. AFTER DISMISSING THE CRIMINAL CHARGE

C.A.'s second argument is that the superior court did not have the authority to hold him for up to 14 days after dismissing the criminal charge. We disagree.

We review questions of statutory interpretation de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and

---

[6] To the extent that C.A. is also making a separate argument that the State failed to present sufficient evidence to prove this felony-based commitment, we also reject it (considering C.A.'s mens rea need not be proved). The superior court found that C.A. made threats and pointed what appeared to be a gun at the security guard, and also found that the guard reasonably believed that he was going to be killed by C.A. In addition, the superior court found that C.A. presented a substantial likelihood of repeating acts similar to the charged criminal behavior. Because C.A. did not assign error to any of the superior court's findings of fact, they are all verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). These unchallenged factual findings support the superior court's conclusion that C.A. committed acts constituting felony harassment and continues to present a substantial likelihood of repeating acts similar to the charged criminal behavior. Accordingly, C.A.'s commitment is supported by sufficient evidence.

give effect to the legislature's intent. *Id.* at 762. To determine legislative intent, we first look to the statute's plain language. *Id.* "If the statute's meaning is plain on its face, we give effect to that plain meaning as the expression of what was intended." *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). Only when a statute is ambiguous do we turn to statutory construction, legislative history, and relevant case law to determine legislative intent. *Jametsky*, 179 Wn.2d at 762. And we construe statutes to avoid absurd results. *Jespersen v. Clark County*, 199 Wn. App. 568, 578, 399 P.3d 1209 (2017).

As relevant here, former RCW 10.77.086(5) (2022) provides that when a defendant is unable to be restored to competency, the superior court shall dismiss the charges and order the defendant committed to the state hospital for up to 120 hours to be evaluated for the purposes of filing a civil commitment proceeding. And former RCW 10.77.068 (2022) provides the time periods mandated by the legislature for the performance of services related to competency evaluation and restoration. Former RCW 10.77.068 provides, in relevant part:

> [(1)](b) The legislature establishes a performance target of 14 days or fewer for the following services related to competency to stand trial, when access to the services is legally authorized:
>
> . . . .
>
> (ii) To extend an offer of admission to a defendant ordered to be committed to a state hospital following dismissal of charges based on incompetency to stand trial under RCW 10.77.086.
>
> . . . .
>
> [(2)](b) A maximum time limit of 14 days as measured from the department's receipt of the court order . . . is established to complete the services specified in subsection (1)(b) of this section . . . .

Here, the superior court properly exercised its authority consistent with the plain language of the relevant statutes. The plain language of former RCW 10.77.086(5) requires that,

when competency has not been restored, the superior court dismiss the charges against the defendant[7] and order that the defendant be committed for evaluation for civil commitment. The superior court's order complied with these statutory requirements. Nothing in the statute requires that the defendant be released from confinement immediately upon dismissal of the charges.

And former RCW 10.77.068 clearly contemplates that the state hospital will have 14 days to offer admission to a defendant committed under former RCW 10.77.086(5). Here, the language included in the superior court's order, read as a whole, is clearly designed to enforce the prescribed legislative time periods for WSH to comply with the superior court's order committing C.A. for evaluation by ordering that C.A. be released if he is not transferred to WSH within the allowed 14 days. The superior court did not exceed its authority, but rather explicitly enforced the legislative directive to WSH in former RCW 10.77.068.

Finally, interpreting former RCW 10.77.068 and former RCW 10.77.086 to require the superior court to release a confined criminal defendant immediately upon dismissal of charges after ordering commitment for evaluation for civil commitment leads to an absurd result. Since 2013, the legislature has identified the need to balance protecting public safety from violent behavior committed by individuals suffering from behavioral health disorders and reducing unnecessary confinement from those suffering from behavioral health disorders. *See* LAWS OF

---

[7] We note that there are circumstances, not applicable here, where the superior court may not dismiss the charges and must order an extended competency restoration period. *See* former RCW 10.77.086(5) ("However, the court shall not dismiss the charges if the court or jury finds that: (a) The defendant (i) is a substantial danger to other persons; or (ii) presents a substantial likelihood of committing criminal acts jeopardizing public safety or security; and (b) there is a substantial probability that the defendant will regain competency within a reasonable period of time.").

2013, ch. 289, § 1; LAWS OF 2015 1st sp. s., ch. 7, § 1. Reading the relevant statutes to require superior courts to immediately release a criminal defendant from confinement after ordering commitment under former RCW 10.77.068 is an absurd interpretation of the statutes, based on language that does not exist, contrary to the legislative intent to protect the public from violent behavior. In contrast, reading the statutes to allow the state hospitals the prescribed 14 days to offer admission to a criminal defendant who is already subject to confinement and is ordered to be committed for evaluation is a reasonable interpretation of the plain language of the statute consistent with the legislative intent.

The superior court's order complied with all the relevant statutory requirements regarding commitment of an individual charged with a felony who cannot be restored to competency. The superior court dismissed the charge and ordered the defendant committed as required by former RCW 10.77.086(5). And the superior court allowed WSH 14 days to comply with the commitment order as prescribed by former RCW 10.77.068. Accordingly, C.A.'s argument fails.

CONCLUSION

We hold that the First Amendment does not require the State to prove C.A.'s mental state for his felony-based commitment. We also hold that the superior court had the authority to allow WSH 14 days to comply with its commitment order. Accordingly, we affirm the superior court's commitment order.

_____
PRICE, J.

We concur:

_____
CRUSER, C.J.

_____
MAXA, J.