# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>M.S.,<br><br>                           Petitioner. | No.  54665-5-II<br><br>PUBLISHED OPINION |

LEE, C.J. — M.S. appeals the trial court's 180-day involuntary recommitment order.  M.S. argues that the trial court failed to notify him of his statutory right to a jury trial and obtain a waiver of his statutory right to a jury trial on the record.  M.S. also argues that he had a constitutional right to a jury trial on his 180-day petition for recommitment which required a knowing, intelligent, and voluntary waiver of his right to a jury trial.

We decline to reach M.S.'s notice challenge based on a statutory right to a jury trial because he raises the issue for the first time on appeal and he fails to show how the alleged error is of constitutional magnitude in order to obtain appellate review under RAP 2.5(a)(3).  We also hold that M.S. did not have a constitutional right to a jury trial on his 180-day recommitment petition.  Accordingly, we affirm the trial court's 180-day recommitment order.

## FACTS

On January 23, 2020, the State petitioned under Chapter 71.05 RCW to involuntarily detain M.S. for an additional 180 days, alleging that his schizoaffective disorder rendered him gravely disabled.  There is no record of a preliminary appearance after the State filed its initial petition for

commitment. There also is no record on appeal of any other prior proceedings leading to the State's petition for 180-day recommitment.

The trial court held an evidentiary hearing on the State's 180-day recommitment petition on January 30, 2020. At the hearing, M.S.'s counsel stated that M.S. was present and ready to proceed to trial on the State's petition. The trial court proceeded to hear the petition without a jury.

Joscelyn Rompogren, Ph.D., a psychologist at Western State Hospital, testified. Rompogren testified that M.S. has a working diagnosis of schizoaffective disorder bipolar type. Rompogren further testified that M.S.'s schizoaffective disorder would prevent him from consistently meeting his basic health and safety needs if he were released from the hospital. Rompogren also testified that M.S. does not have a rational understanding of his need for psychiatric treatment and that M.S. would not voluntarily seek mental healthcare if he were released from the hospital.

M.S. also testified at the hearing and stated that he wished to be released from Western State Hospital. M.S. testified that he would be able to financially support himself if he were released from the hospital, and he listed several different mental health care facilities that he could attend if he needed care.

The trial court found by clear, cogent, and convincing evidence that M.S. continues to be gravely disabled and that less restrictive alternatives to involuntary detention are not in M.S's best interests. The trial court ordered M.S. up to 180-days of involuntary treatment. M.S. moved to revise the trial court's order finding grave disability, and the court denied M.S.'s motion to revise.

M.S. appeals.

ANALYSIS

A.    NOTICE OF STATUTORY RIGHT TO JURY TRIAL

M.S. argues that the trial court's 180-day involuntary recommitment order should be reversed because he was not given notice of his statutory right to a jury trial and the trial court did not obtain a waiver of that right. We decline to reach the merits of this argument because M.S. raises the issue for the first time on appeal without showing that it is a manifest error affecting a constitutional right.

1.    Legal Principles

Generally, a party may not raise an issue for the first time on appeal. RAP 2.5(a). However, RAP 2.5(a)(3) allows a party to raise an issue for the first time on appeal where the issue involves a "manifest error affecting a constitutional right." "Application of RAP 2.5(a)(3) depends on the answers to two questions: '(1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?" *State v. Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020) (quoting *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015)).

In analyzing the asserted constitutional interest, the reviewing court does not assume the alleged error is of constitutional magnitude. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). The reviewing court looks to the asserted claim and assesses whether, if correct, it implicates a constitutional interest as compared to another form of trial error. *Id.*

The Involuntary Treatment Act (ITA) provides a respondent to a civil commitment proceeding with a statutory right to be advised of their right to a jury trial under certain

circumstances. *See* former RCW 71.05.300(2) (2019). Former RCW 71.05.300(1) provided in relevant part that,

> The petition for ninety day treatment shall be filed with the clerk of the superior court at least three days before expiration of the fourteen-day period of intensive treatment. At the time of filing such petition, the clerk shall set a time for the person to come before the court on the next judicial day after the day of filing unless such appearance is waived by the person's attorney.

And former RCW 71.05.300(2) provided that "[a]t the time set for appearance the detained person shall be brought before the court, unless such appearance has been waived and the court shall advise him . . . of his . . . right to a jury trial."

### 2. M.S. Fails to Show a Constitutional Error

M.S. argues that the trial court's alleged failure to notify him of his statutory right to a jury trial violated his right to procedural due process. We disagree.

We review questions of law, including constitutional due process guarantees, de novo. *In re Det. of Fair,* 167 Wn.2d 357, 362, 219 P.3d 89 (2009). "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas,* 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979); *see also In re Det. of Harris,* 98 Wn.2d 276, 279, 654 P.2d 109 (1982) ("[D]ue process guaranties must accompany involuntary commitment for mental disorders.").

Procedural due process prohibits the State from depriving an individual of protected liberty interests without appropriate procedural safeguards. *In re Pers. Restraint of Bush,* 164 Wn.2d 697, 704, 193 P.3d 103 (2008). Procedural due process "[a]t its core is a right to be meaningfully heard, but its minimum requirements depend on what is fair in a particular context." *In re Det. of Stout,* 159 Wn.2d 357, 370, 150 P.3d 86 (2007).

4

When determining due process rights, we utilize the balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *See In re D.E.*, 196 Wn.2d 92, 102, 469 P.3d 1163 (2020). Under this test, we balance (1) the private interests affected, (2) the risk of erroneous deprivation of the private interest created by the procedures used, and (3) the State's interest in using the challenged procedure. *Mathews*, 424 U.S. at 335.

Here, M.S. fails to demonstrate that the trial court's alleged failure to comply with former RCW 71.05.300 violated procedural due process. In fact, M.S. fails to undertake the *Mathews* balancing test at all. Thus, M.S. does not show that the alleged error is of constitutional magnitude. *See State v. Wheaton,* 121 Wn.2d 347, 365, 850 P.2d 507 (1993). And because M.S. does not show that the alleged error is of constitutional magnitude, we decline to review the alleged error under RAP 2.5(a)(3).

B. NO CONSTITUTIONAL RIGHT TO JURY TRIAL

M.S. asks that we hold that persons subject to a 180-day involuntary commitment proceeding have a constitutional right to a jury trial which would require a knowing, intelligent, and voluntary waiver of the jury trial right. We decline to do so.

The Washington Constitution provides that "[t]he right of trial by jury shall remain inviolate." WASH. CONST. art. I, § 21. To determine whether this right exists for a particular case, Washington courts use a two-step analysis. *In re Det. of M.W.*, 185 Wn.2d 633, 662, 374 P.3d 1123 (2016). First, the court identifies the scope of the right to a jury trial in 1889. *Id.* Second, the court decides whether "the type of action at issue is similar to one that would include the right to a jury trial at that time." *Id.* "'The right is the historical right enjoyed at the time it was guaranteed by the Constitution.'" *In re Det. of S.E.*, 199 Wn. App. 609, 615, 400 P.3d 1271 (2017)

5

(internal quotation marks omitted) (quoting *Wings of the World, Inc. v. Small Claims Court*, 97 Wn. App. 803, 807, 987 P.2d 642 (1999)), *review denied*, 189 Wn.2d 1032 (2018).

The Code of 1881 was in effect when Washington adopted its constitution in 1899. *In re Det. of C.B.*, 9 Wn. App. 2d 179, 183, 443 P.3d 811, *review denied*, 194 Wn.2d 1005 (2019). Section 1632 of this code provided an individual with the right to demand a jury trial in a case to decide whether he could be committed indefinitely to a "hospital for the insane." *S.E.*, 199 Wn. App. at 616 n.5. Therefore, at the time Washington adopted its constitution, a constitutional right to a jury trial only attached to a case involving the State's request for indefinite detention. *C.B.*, 9 Wn. App. 2d at 184.

Our Supreme Court's consideration of other provisions of the ITA shows that a proceeding to decide if a person should be involuntarily committed for 180 days is not similar to the 1889 commitment proceeding that included a right to a jury trial. In *M.W.,* our Supreme Court considered whether a provision of the ITA providing the procedure for recommitting individuals found incompetent to stand trial for violent felonies violated the constitutional right to a jury trial. 185 Wn.2d. at 663. The court held it did not. *Id*. The *M.W.* court reasoned that

> [the] civil commitment process is distinguishable from indefinite civil commitment schemes that require jury trials on initial commitment because the ITA involves only short periods of commitment and requires the State to file a new petition and carry a high burden of recommitment at the expiration of each period (here, every 180 days).

*Id.*

In *C.B.*, Division One of this court held that "the Washington Constitution does not provide for a right to a jury for proceedings on a petition for a 90-day involuntary commitment" where the State alleges that the respondent is gravely disabled. 9 Wn. App. 2d at 185. Finding the *M.W.*

court's reasoning instructive, the court found that "the 90-day commitment period in issue cannot be distinguished" from the 180-day recommitment period in *M.W.* *Id.* at 184.

M.S. contends that he has a constitutional right to a jury trial in a 180-day commitment proceeding based on *S.E.*, 199 Wn. App. at 624, which he claims concluded that "involuntary detention lasting more than 60 days required a jury trial." Br. of Appellant at 17. We disagree.

In *S.E.*, the court held that no constitutional right to a jury trial exists for a 14-day probable cause hearing under the ITA. 199 Wn. App. at 627-28. Contrary to M.S.'s contention, the *S.E.* court did not hold that involuntary detention lasting more than 60 days required a jury trial. Instead, the *S.E.* court held that a constitutional right to a jury trial typically attached to indefinite civil commitment proceedings. *Id.* at 616-17; *see also C.B.*, 9 Wn. App. 2d at 184. Because *S.E.* does not hold that involuntary detention lasting more than 60 days requires a jury trial, that case is not persuasive.

Here, M.S. fails to show a constitutional right to a jury trial on a 180-day petition for involuntary commitment. The civil commitment process that applied to M.S. is distinguishable from the former indefinite civil commitment scheme that required jury trials. *M.W.*, 185 Wn.2d. at 663. Because the constitutional right to a jury trial appears to only attach to indefinite civil commitments at the time Washington adopted its constitution, and because the State petitioned for M.S.'s recommitment for a short, defined period, it follows that M.S. did not have a constitutional right to a jury trial in his 180-day recommitment hearing. *See S.E.*, 199 Wn. App. at 616-17; *see also C.B.*, 9 Wn. App. 2d at 184.[1]

---

[1] M.S. also argues that, because he claims a constitutional right to a jury trial, he had to knowingly, intelligently, and voluntarily waive his right to a jury trial on the record for the waiver to be valid.

No. 54665-5-II

Accordingly, we affirm the trial court's 180-day commitment order.

Le, C.J.

We concur:

Worswick, J.

Cruser, J.

---

As discussed above, we hold that there is no constitutional right to a jury trial in a 180-day civil commitment hearing. And M.S. cites no controlling case applying criminal standard of jury trial waivers to civil commitment proceedings under Chapter 71.05 RCW. In fact, there is case law that holds explicitly to the contrary. *See C.B.*, 9 Wn. App. 2d at 190. Therefore, we decline M.S.'s invitation to require that a respondent demonstrate a knowing, voluntary, and intelligent waiver of their right to a jury trial on the record in a 180-day civil commitment hearing.

8