IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of A.J.C., <br><br>              Appellant. | No. 84865-8-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

COBURN, J. — A.J.C. challenges an order detaining him for 180 days of treatment under the involuntary treatment act (ITA), chapter 71.05 RCW. He argues that the trial court erred by proceeding with a bench trial without obtaining a valid waiver of his right to a jury trial. Because A.J.C. raises this argument for the first time on appeal and fails to demonstrate manifest constitutional error, we affirm.

FACTS

On August 10, 2022, A.J.C. was taken into emergency custody after sheriff's deputies found him trespassing in his neighbor's yard wearing only a construction vest and boots. He was hospitalized and evaluated at Fairfax Hospital, which later petitioned to detain him for 14 days of involuntary treatment. After a hearing, the trial court entered a 14-day commitment order based on a finding that A.J.C. was gravely disabled under former RCW 71.05.020(24)(b)

Citations and pin cites are based on the Westlaw online version of the cited material.

(2022) in that he "show[ed] severe deterioration in routine functioning, evidenced by repeated [and] escalating loss of cognitive and volitional control over his actions such that, outside the hospital setting, he would not receive care that is essential to his health and safety." In announcing its decision, the trial court advised A.J.C. that if Fairfax felt he was not making progress in treatment, it could petition the court "and ask for 90 days . . . or 180 days thereafter," and if Fairfax did that, A.J.C. would "have the right to have another hearing or trial, and . . . could even let a jury make that decision rather than a . . . judicial officer."

On August 26, Fairfax petitioned to detain A.J.C. for 90 days of involuntary treatment. On September 7, the trial court entered an agreed, less restrictive alternative (LRA) order remanding A.J.C. to 90 days of behavioral health treatment. The LRA order states, "If involuntary treatment beyond . . . the ninety days of less restrictive treatment is to be sought, respondent will have the right to a full hearing or jury trial as required by RCW 71.05.310." It also states, "Pursuant to an oral presence waiver, defense counsel provided Respondent with notice of the right to full hearing or jury trial."

King County designated crisis responders later petitioned to revoke the LRA. On November 29, the trial court granted the petition after a hearing, finding that A.J.C. had violated the LRA's terms and ordering that he be committed for inpatient treatment. Meanwhile, A.J.C. was readmitted to Fairfax.

In December 2022, Fairfax petitioned to detain A.J.C. for an additional 180 days of involuntary treatment. No jury trial demand appears of record, and a bench trial began on December 12 with A.J.C. present by video. The trial court

2

found by clear, cogent, and convincing evidence that A.J.C. continued to be gravely disabled and that an LRA was not in the best interest of A.J.C. and others. It ordered A.J.C. detained for 180 days of inpatient treatment. A.J.C. appeals.

DISCUSSION

A.J.C. contends that reversal is required because he did not validly waive his right to a jury trial before the court proceeded with a bench trial on Fairfax's 180-day involuntary treatment petition. He acknowledges that he is raising this argument for the first time on appeal but asserts it "is properly raised as manifest constitutional error under RAP 2.5(a)(3)." We disagree.

Under RAP 2.5(a), we "may refuse to review any claim of error which was not raised in the trial court." A party may raise a claimed error for the first time on appeal if it is a manifest error affecting a constitutional right, RAP 2.5(a)(3), but the error must be "truly of constitutional dimension." State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). "To determine whether an error is truly of constitutional dimension, appellate courts first look to the asserted claim and assess whether, if the claim is correct, it implicates a constitutional interest as compared to another form of trial error." State v. Grimes, 165 Wn. App. 172, 186, 267 P.3d 454 (2011).

A.J.C.'s claim that he did not validly waive his right to a jury trial is premised on his assertion that article 1, section 21 of the Washington State Constitution guarantees the right to a jury trial in a 180-day involuntary commitment proceeding. "To determine whether [a jury trial] right exists for a

particular case, Washington courts use a two-step analysis." In re Det. of M.S., 18 Wn. App. 2d 651, 657, 492 P.3d 882 (2021). "First, the court identifies the scope of the right to a jury trial in 1889." Id. "Second, the court decides whether 'the type of action at issue is similar to one that would include the right to a jury trial at that time.'" Id. (quoting In re Det. of M.W., 185 Wn.2d 633, 662, 374 P.3d 1123 (2016)). "'The right is the historical right enjoyed at the time it was guaranteed by the Constitution.'" Id. (internal quotation marks omitted) (quoting In re Det. of S.E., 199 Wn. App. 609, 615, 400 P.3d 1271 (2017)).

As we explained in M.S., the Code of 1881, which was in effect when the state constitution was adopted, provided an individual the right to demand a jury trial "in a case to decide whether [the individual] could be committed *indefinitely* to a 'hospital for the insane.'" Id. (emphasis added) (quoting S.E., 199 Wn. App. at 616 n.5); see also CODE OF 1881, ch. CX, § 1632. Thus, "at the time Washington adopted its constitution, a constitutional right to a jury trial *only* attached to a case involving the State's request for *indefinite* detention." Id. at 657-58 (emphasis added).

As we also explained in M.S., "a proceeding to decide if a person should be involuntarily committed for 180 days is not similar to the 1889 commitment proceeding that included a right to a jury trial." Id. at 658. We reasoned that

> "[the] civil commitment process is distinguishable from indefinite
> civil commitment schemes that require jury trials on initial
> commitment because the ITA involves only short periods of
> commitment and requires the State to file a new petition and carry a
> high burden of recommitment at the expiration of each period (here,
> every 180 days)."

Id. (alteration in original) (quoting M.W., 185 Wn.2d at 663). We found instructive

our earlier opinion in In re Detention of C.B., where we held for the same reasons that the state constitution did not provide a jury trial right for 90-day involuntary commitment proceedings under the ITA. M.S., 18 Wn. App. 2d at 658 (citing C.B., 9 Wn. App. 2d 179, 185, 443 P.3d 811 (2019)).

We adhere to our reasoning in M.S. and C.B. and hold that because the Washington State Constitution does not guarantee a right to a jury trial for 180-day involuntary commitment proceedings, A.J.C.'s claim that he did not validly waive that right does not implicate a constitutional interest. Accordingly, we do not reach that claim for the first time on appeal.[1]

A.J.C. argues that M.S. and C.B. were incorrectly decided. He relies on In re Ellern, 23 Wn.2d 219, 160 P.2d 639 (1945), Quesnell v. State, 83 Wn.2d 224, 517 P.2d 568 (1973), Sherwin v. Arveson, 96 Wn.2d 77, 633 P.2d 1335 (1981), and State v. Walker, 13 Wn. App. 545, 536 P.2d 657 (1975), to assert that the state constitution preserved the right to a trial by jury "in mental illness proceedings." But none of these cases held that a 180-day civil commitment proceeding under the ITA is similar to the types of mental illness proceedings for which a jury trial existed at the time of our state constitution's adoption.[2] To the

---

[1] Because we do not reach the merits, we need not and do not decide what a valid waiver would have required. Cf. M.S., 18 Wn. App. 2d at 659 n.1 (declining to decide whether the criminal standard for jury trial waivers applies to civil commitment proceedings under the ITA); but see C.B., 9 Wn. App. 2d at 184-85 (holding that "no state constitutional jury right exists for a 90-day commitment under the ITA" and holding further that even if such a right existed, the respondent "must demand it or it is waived").

[2] See Ellern, 23 Wn.2d at 223 (observing that § 1632 of the Code of 1881, regarding indefinite commitment, recognized a respondent's right to demand a jury); Quesnell, 83 Wn.2d at 242 & n.23 (holding that guardian ad litem could not waive a detainee's right to a jury trial after the detainee had asserted it through private counsel and stating that "[o]ur ruling in this case is limited strictly to the single issue involved"); Sherwin, 96 Wn.2d at 84 (holding that there is no constitutional right to have a civil commitment proceeding conducted in the county of one's residence); Walker, 13 Wn.

contrary, our Supreme Court noted in M.W. that it had "never affirmatively recognized the right to a jury trial" in an ITA proceeding and that the civil commitment process under the ITA is "distinguishable" from the indefinite civil commitment schemes discussed in historical cases like Ellern, Quesnell, and Sherwin. M.W., 185 Wn.2d at 663.

To this end, A.J.C. argues that M.W. is "materially distinguishable" because it involved an ITA provision requiring certain individuals to meet a threshold burden of production before proceeding to a full evidentiary commitment hearing. See id., 185 Wn.2d at 664. A.J.C. also points out, correctly, that the M.W. court assumed without deciding that a jury trial right exists in that context. See id. at 664 ("[E]ven assuming an individual subject to [the ITA provision at issue] has a right to a jury in recommitment proceedings, the statute meets constitutional standards."). But like the instant case, M.W. involved an asserted constitutional right to a jury trial in an ITA proceeding. Although the M.W. court ultimately did not decide whether such a right exists, its language distinguishing ITA proceedings from historical commitment proceedings is persuasive in determining whether A.J.C. has carried his burden to show that his claimed error is truly of constitutional dimension. See Grimes, 165 Wn. App. at 185-86 (party urging review of issue raised for the first time on appeal bears burden of demonstrating manifest constitutional error).

Finally, A.J.C. points out that our Supreme Court recently referred to the civil commitment scheme as it existed in 1928 as "an earlier version of the ITA."

_____

App. at 556 (holding that the constitution does not guarantee a criminal defendant the right to have a jury determine the defendant's competence to stand trial).

6

In re Det. of A.C., No. 100668-3, slip op. at 8-9 (Wash. July 27, 2023) https://www.courts.wa.gov/opinions/pdf/1006683.pdf (citing In re Welfare of Eastman, 151 Wash. 321, 322, 275 P. 724 (1929)). But the A.C. court did so in confirming that the ITA is strictly construed, see id. at 86; A.C. did not involve an asserted jury trial right. We are not persuaded by A.J.C.'s contention that A.C. "confirm[ed that] a proceeding to involuntarily commit a person for 180 days of mental health treatment is plainly analogous to proceedings in 1889 to commit persons for mental illness or 'insanity.'"

We affirm.

_____
Coburn, J.

WE CONCUR:

_____
Feldman, J.

_____
Hazelrigg, A.C.J.