**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| In the Matter of the Detention of: | No. 86790-3-I |
|---|---|
| J.K. | (consolidated w/86868-3-I) |
| | DIVISION ONE |
| | UNPUBLISHED OPINION |

FELDMAN, J. — J.K. appeals the trial court's 14-day and 180-day involuntary treatment orders. He argues there was insufficient evidence to commit him for involuntary treatment, the trial court abused its discretion in relying on hearsay evidence, and the 180-day petition should have been dismissed because it was facially invalid. Because the parties are familiar with the facts and this opinion will not be published, we recite the facts only as necessary to explain our reasoning below. Finding no entitlement to relief, we affirm.[1]

I

J.K. claims "The trial court abused its discretion by relying on . . . insufficient evidence when ordering J.K's involuntary commitment." We disagree.

A

To commit a minor for involuntary treatment, the State must show the minor "presents a likelihood of serious harm or is gravely disabled." RCW

---

[1] Although both J.K.'s 14-day and 180-day treatment periods have ended, this appeal is not moot as his commitment orders may have collateral consequences in future proceedings. *See In re Det. of B.M.,* 7 Wn. App. 2d 70, 77, 432 P.3d 459 (2019).

71.34.740(9)(a); RCW 71.34.750(6)(a)(ii). A minor presents a likelihood of serious harm under RCW 71.34.020(39)(a)(i) if there is a substantial risk that "[p]hysical harm will be inflicted by a minor upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself." And a minor is gravely disabled under RCW 71.34.020(27)(a) if "as a result of a behavioral health disorder, [the minor] is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health and safety." To establish grave disability, the State must present "recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, or medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." *In re Det. of LaBelle*, 107 Wn.2d 196, 204-05, 728 P.2d 138 (1986).[2]

The burden of proof differs depending on the duration of the involuntary treatment. At the initial 14-day commitment hearing, the State bears the burden of proving likelihood of serious harm or grave disability by a preponderance of the evidence. RCW 71.34.740(9). If necessary, the State can petition to extend a minor's involuntary treatment by 180 days. At the 180-day hearing, the State must show that the minor's involuntary treatment should continue by clear, cogent, and convincing evidence. RCW 71.34.750(6)(a). This requires that "the ultimate fact in issue . . . be shown by evidence to be highly probable." *LaBelle*, 107 Wn.2d at 209 (internal quotations omitted).

---

[2] We focus in the text above on the asserted grounds for involuntary commitment; the State does not assert J.K. presents a likelihood of serious harm under RCW 71.34.020(39)(a)(ii) nor does it assert J.K. is gravely disabled under RCW 71.34.020(26)(b).

Our review of these issues is both limited and deferential. On review, we must determine "whether substantial evidence supports the [trial court's] findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." *Id.* Where the State must prove its case by a preponderance of the evidence, "[s]ubstantial evidence is the quantum of evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *In re Det. of H.N.*, 188 Wn. App. 744, 762, 355 P.3d 294 (2015). Where the State must prove its case by clear, cogent, and convincing evidence, "the findings must be supported by substantial evidence in light of the 'highly probable' test." *LaBelle*, 107 Wn.2d at 209 (quoting *In re Interest of Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984)). In either case, "when evaluating the sufficiency of the evidence, we consider the evidence in the light most favorable to the Petitioner[]," which here is the State. *In re Det. of A.M.*, 17 Wn. App. 2d 321, 330, 487 P.3d 531 (2021).

B

Applying these legal principles to the 14-day commitment order, substantial evidence supports the trial court's determination that J.K. presented a likelihood of serious harm to himself at the time of the 180-day hearing. J.K was hospitalized at Seattle Children's Hospital after attempting to overdose on common household medication. Janise Zayas, a licensed clinical social worker, conducted J.K.'s initial assessment. She testified that, during this assessment, J.K. shared that he was actively suicidal, that he had prior overdose attempts, and "that he still had access to [those] medications at home." Zayas further testified that J.K. attempted suicide while in the hospital "by tying a T-Shirt around his neck." This evidence supports

3

the trial court's determination that J.K. presented a likelihood of serious harm to himself at the time of the 14-day hearing.

Substantial evidence also supports the trial court's determination that J.K was gravely disabled at the time of the 14-day hearing. Melissa Jensen, an advanced practice registered nurse and court evaluator, testified, "Right now, [J.K.'s] primary diagnosis is anorexia nervosa." She added that J.K. was "distressed about gaining weight," "expressed a desire to discontinue eating disorder treatment in general," and "maintain[ed] that . . . if he were to go home, he would likely [try to] get down to 90 pounds." Additionally, Jensen testified that while "[J.K.] ha[d] been eating by mouth and complying with the eating disorder guideline of care," he "require[d] consistent observation and insurance [sic] that he is following the treatment plan." Because of this, Jensen testified "[J.K.] cannot be managed at a lower level of care." Jensen emphasized that without inpatient treatment, J.K. may "go backwards and become metabolically at risk." This is substantial evidence to support the trial court's determination that J.K. was gravely disabled at the time of the 14-day hearing.

C

Turning to the 180-day commitment order, substantial evidence again supports the trial court's determination that J.K. presented a likelihood of serious harm to himself at the time of the 180-day hearing. Jensen testified that "J.K. tried to elope off of the unit and tried to wrap a blanket around his neck as an attempt to strangle himself." Additionally, Jensen testified that J.K. displayed self-harming and aggressive behaviors like "prevent[ing] [s]taff and patients from entering the

4

[common] space," "lung[ing] at doors while banging on them for extended period[s] of time," and "kicking and hitting the windows in the community space." Jensen also testified that J.K. had to be physically restrained at least once due to his outbursts. This is substantial evidence to support the trial court's determination that J.K. presented a likelihood of serious harm to himself at the time of the 180-day hearing.

Substantial evidence also supports the trial court's determination that J.K. was gravely disabled at the time of the 180-day hearing. Jensen testified, "Our primary diagnosis is anorexia nervosa. And then the secondary diagnosis is an anxiety disorder." She further testified that J.K. "requir[ed] 24/7 supervision in order to maintain his nutritional intake" while committed, and even with supervision, J.K. occasionally refused meals outright. Jensen explained that two days before his commitment hearing "[J.K.] had difficulty during meal support [and] both breakfast and lunch required 100 percent supplementation, which means that he did not eat anything." Additionally, Jensen testified that J.K. "continues to tell me that if he is not in a highly-restrictive program, he will decompensate, he will go back to trying to get down to between 80 to 90 pounds." Jensen explained that such weight loss would have harmful and long-lasting impacts on J.K.'s health. This substantial evidence supports the trial court's determination that J.K. was gravely disabled at the time of the 180-day hearing.

II

Next, J.K. claims "The trial court abused its discretion by relying on hearsay . . . when ordering J.K's involuntary commitment" and that "[a]ny reliance on Ms.

Zayas's testimony about the prior 'overdose' and Ms. Jenson's testimony about previous hospitalizations was an error." This, too, is incorrect.

A party's own out-of-court statements are not considered hearsay and are admissible as substantive evidence when offered against the party at a hearing. ER 801(d)(2)(i). Here, J.K. admitted to his prior overdose attempts during his commitment assessment. Thus, Jensen's testimony regarding J.K.'s own statements is not hearsay under ER 801(d)(2)(i) and the trial court did not abuse its discretion in considering those statements. *See In re Welfare of M.R.*, 200 Wn.2d 363, 376, 518 P.3d 214 (2022) (court reviews decision to admit evidence "for an abuse of discretion").[3]

Testimony regarding J.K.'s prior hospitalizations was also admissible. The parties correctly stipulated that the medical charts being offered into evidence constituted business records exempt from the hearsay rule under RCW 5.45.020. Moreover, even without considering the evidence of J.K.'s prior hospitalizations, J.K.'s actively suicidal mindset, attempted suicide at the hospital, and prior overdose attempts support the trial court's findings that J.K. "presents a likelihood of serious harm to himself." As such, any evidentiary error was harmless. *See M.R.*, 200 Wn.2d at 376 ("[i]f an abuse of discretion was committed, this court then reviews the error for prejudice"). J.K.'s hearsay arguments thus fail.

---

[3] "An abuse of discretion occurs if a judge's decision was 'manifestly unreasonable,' meaning no reasonable person would reach the same conclusion, or if it 'rests on untenable grounds,' meaning it relied on facts not supported by the record or on an incorrect legal standard." *Id.* (quoting *State v. Griffin*, 173 Wn.2d 467, 473, 268 P.3d 924 (2012)).

III

Lastly, J.K. claims "[t]he 180-day petition should have been dismissed because it was facially invalid." We decline to address the merits of this argument because J.K. failed to raise it below.

Under RAP 2.5(a), "The appellate court may refuse to review any claim of error which was not raised in the trial court." However, a party may raise an issue for the first time on appeal if the issue involves a "manifest error affecting a constitutional right." RAP 2.5(a)(3). "Application of RAP 2.5(a)(3) depends on the answers to two questions: '(1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?'" *State v. Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020) (quoting *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015)). In analyzing the asserted constitutional interest, the reviewing court does not assume the alleged error is of constitutional magnitude. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

*In the Matter of the Detention of M.S.*, 18 Wn. App. 2d 651, 492 P.3d 882 (2021), illustrates how RAP 2.5(a)(3) applies here. In *M.S.*, the appellant argued that the "trial court's alleged failure to notify him of his statutory right to a jury trial violated his right to procedural due process." *Id.* at 656. However, the appellant did not explain his due process argument beyond this mere assertion. The court held that "M.S. fail[ed] to demonstrate that the trial court's alleged failure to comply with [the statute] violated procedural due process." *Id.* at 656. The court explained that "[w]hen determining due process rights, we utilize the balancing test from

7

*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)." *Id.* By raising a procedural due process violation and "fail[ing] to undertake the *Mathews* balancing test at all," M.S. "does not show that the alleged error is of constitutional magnitude." Therefore, the court declined to review the alleged error under RAP 2.5(a)(3). *Id.* at 656-57.

Here, J.K. alleges the State's 180-day commitment petition was invalid because one of the signatories failed to indicate they were a "child and adolescent or family psychiatric advanced nurse practitioner," as required by RCW 71.34.750(3)(a). J.K. contends this "deprived [him] of [his] liberty and due process" because "[h]ad the court realized the hospital's disregard of [RCW 71.34.750(3)(c)], the court would have been compelled to dismiss" the State's petition. App. Rep. 13. As in *M.S.*, J.K. suggests the State's statutory violation is of constitutional magnitude but fails to explain why that is so; he does not undertake the *Mathews* balancing test nor does he support his argument with relevant case law. "[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 14, 721 P.2d 1 (1986) (quoting *United States v. Phillips*, 433 F.2d 1364, 1366 (8th Cir. 1970)). As in *M.S.*, we decline to review the alleged error under RAP 2.5(a)(3).

IV

Substantial evidence supports the trial court's findings and, in turn, its conclusions that J.K. presented a likelihood of serious harm to himself and was

gravely disabled at the time of his commitment hearings.  Because J.K. has not established an entitlement to relief, we affirm.

Feldman, J.

WE CONCUR:

Díaz, J.                                    Coburn, J.