**FILED**
**MAY 14, 2026**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40332-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN TROY BELBIN, | ) | |
| | ) | |
| Appellant. | ) | |

MURPHY, J. — A jury convicted John Belbin of one count of residential burglary, two counts of violation of a no-contact order, and one count of obstructing a law enforcement officer. Belbin assigns error solely to the residential burglary conviction. He contends the word "should" in the court's "separate crimes" jury instruction diluted it into a permissive rather than mandatory instruction, made the legal standard unclear to the average juror, and allowed him to be improperly convicted of residential burglary based on the verdicts on the misdemeanor charges.

Belbin did not object to this instruction at trial. He seeks review under RAP 2.5(a) as a manifest constitutional error. Because he has failed to demonstrate an error of constitutional magnitude or one that is manifest, we decline review of the claimed error.

FACTS

*Background*

John Belbin was subject to a no-contact order prohibiting him from coming within 1,000 feet of his wife and the family home. Although Belbin initially moved out of the home to comply with the no-contact order, he later moved back in. On December 21, 2022, law enforcement responded to an anonymous tip of a possible no-contact order violation at the family home.

Officers repeatedly knocked at the front door of the home with Belbin's wife eventually exiting and speaking with law enforcement. At the same time, another officer observed Belbin briefly step out of the back door of the house before retreating back inside. With the wife's consent, officers entered the home to locate Belbin.

Belbin ignored repeated and loud announcements ordering him to surrender. The search for Belbin eventually grew to include multiple other officers, a K-9 unit, and a special weapons and tactics (SWAT) team. After several hours, Belbin was arrested after falling through a ceiling. This incident led to charges of violation of the no-contact order, obstructing a law enforcement officer, and residential burglary.

In a separate incident that occurred on January 25, 2023, law enforcement contacted Belbin for a traffic violation and noted his need for medical care. The subsequent investigation determined Belbin had again been in contact with his wife.

2

No. 40332-7-III
*State v. Belbin*

Belbin was charged with an additional count of violation of a no-contact order.

At trial, Belbin did not contest the charges for the two violations of a no-contact order and obstructing law enforcement. He denied committing residential burglary, claiming he entered the home—invited by his wife weeks prior to December 21—to check on her well-being, not to commit a crime. Belbin acknowledged hearing the police announcements calling for him to surrender and ignoring them. He claimed that he did not accidently fall through the ceiling but rather punched a hole through the ceiling to lower himself down to surrender.

Because this was a multi-count case, the trial court gave the standard "separate crimes" pattern jury instruction based on WPIC 3.01 [1]:

> A separate crime is charged in each count. You must decide each count separately. Your verdict on one count *should* not control your verdict on any other count.

Clerk's Papers (CP) at 67 (emphasis added). Belbin did not object to the instruction. The jury also received separate instructions correctly stating the elements of each charged offense, and that the State had the burden to prove beyond a reasonable doubt all the elements of each crime in order to convict Belbin.

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 3.01, at 92 (5th ed. 2021) (WPIC) ("A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on [any] [the] other count.") (alterations in original).

3

In closing statements, the State argued Belbin entered or remained in the home unlawfully due to the no-contact order and did so with intent to commit a crime (either the ongoing violation of the no-contact order or by damaging the ceiling while hiding from police). Defense counsel argued Belbin had been invited back into the home by his wife weeks earlier and therefore did not "enter[] or remain unlawfully", CP at 76, one of the three elements of the crime of residential burglary. In rebuttal, the State emphasized that the no-contact order rendered any entry into the family home unlawful regardless of an invitation by Belbin's wife.

During deliberations, the jury asked: "'What happens if the jury is at an impasse with respect to element No. 2 of the crime of residential burglary?'"[2] 2 Rep. of Proc. (RP) (Dec. 1, 2023) at 745. After a discussion with counsel, the trial court responded to the jury, "'Please refer to the instructions.'" 2 RP (Dec. 1, 2023) at 754. The jury found Belbin guilty as charged.

Belbin now appeals.

---

[2] The "To convict" instruction for the residential burglary charge states: "To convict the defendant of the crime of Residential Burglary, . . . each of the following elements of the crime must be proved beyond a reasonable doubt: (1) That on or about December 21, 2022, the defendant entered or remained unlawfully in a dwelling; (2) That the entering or remaining was with intent to commit a crime against a person or property therein; and (3) That this act occurred in the State of Washington." CP at 76 (jury instruction 12).

ANALYSIS

Belbin argues for the first time on appeal that the word "should" in jury instruction 3, which is taken verbatim from the pattern jury instruction, operates to make the instruction permissive rather than mandatory, potentially allowing the jury to let its verdicts on the violation of the no-contact order or obstruction counts control its verdict on residential burglary. He contends this created a double jeopardy concern by relieving the State of its burden to prove each element of each count independently. The State argues that this claim is unpreserved, not of constitutional magnitude, and not manifest. We agree with the State.

Under RAP 2.5(a), we may decline to review any claimed error that was not raised in the trial court. An exception is made when the unpreserved "error is a 'manifest error affecting a constitutional right.'" *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (quoting RAP 2.5(a)(3)). This requires a demonstration that "(1) the error is manifest and (2) the error is truly of constitutional dimension." *Id*. "Stated another way, the appellant must 'identify a constitutional error and show how the alleged error actually affected the [appellant's] rights at trial.'" *Id*. (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)). For the error to be considered manifest, there must be a showing of "actual prejudice," which means "'the asserted error had practical and identifiable consequences in the trial.'" *Id*. at 99 (quoting *Kirkman*,

159 Wn.2d at 935; *State v. Larmar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014); *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995).

First, Belbin's single assignment of error is not of constitutional magnitude. While Belbin asserts that the separate crimes jury instruction raises double jeopardy concerns, we do "not assume [an] alleged error is of constitutional magnitude." *In re Det. of M.S.*, 18 Wn. App. 2d 651, 655, 492 P.3d 882 (2021). Instead, we assess whether the claimed error, if true, would implicate "a constitutional interest as compared to another form of trial error." *Id*.

Claimed instructional errors are reviewed de novo. *State v. Brett*, 126 Wn.2d 136, 171, 892 P.2d 29 (1995). Each instruction is evaluated in the context of the instructions as a whole. *Id*. "'To satisfy the constitutional demands of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present [their] theory of the case.'" *State v. Weaver*, 198 Wn.2d 459, 465-66, 496 P.3d 1183 (2021) (quoting *O'Hara*, 167 Wn.2d at 105).

Washington courts have long approved WPIC 3.01 as "a correct statement of the law." *State v. Bradford*, 60 Wn. App. 857, 861, 808 P.2d 174, *review denied*, 117 Wn.2d 1003, 815 P.2d 266 (1991). The separate crimes instruction given in *Bradford* was identical to the instruction given at Belbin's trial, and this court found in *Bradford* that

the instruction "merely required that the jury deliberate on each count separately." *Id*.

at 860-61. Although the instruction requires separate deliberation on each count, it does

not direct the jury as to how it is to use evidence. *Id*. The instruction as given in Belbin's

case did not alter the elements of residential burglary (unlawful entry or remaining in a

dwelling with intent to commit a crime therein), violation of a no-contact order (knowing

violation of a valid protection order), or obstruction of a law enforcement officer (willful

hindrance of an officer in the performance of official duties), and did not relieve the State

of its burden to prove the elements of each crime beyond a reasonable doubt. Those

distinct statutory elements were separately defined in other unchallenged instructions.

Belbin's argument—that using the word "should" instead of "shall" somehow

permitted the jury to let a verdict on one count control the verdict on another count—rests

on speculation rather than any recognized constitutional defect. Belbin has not shown

how WPIC 3.01 creates a double jeopardy issue. Belbin argues that the word "should," in

the last sentence of a three-sentence instruction, somehow renders the instruction subject

to permitting multiple prosecutions or punishments. But even through the loosest of

interpretations, the directive given through the instruction is for jurors to decide each

count separately and do so on an individual basis. Because the instruction did not

authorize—let alone require—the jury to convict Belbin based on identical conduct

without differentiation, no constitutional violation arises from the instruction.

7

Even if the claimed error implicated a constitutional right, which it does not, the error is not manifest without a showing of actual prejudice. Our analysis to determine actual prejudice focuses on "whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100. The common legal definition of "'manifest error'" is "'[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Id*. at 100 n.1 (alteration in original) (quoting BLACK'S LAW DICTIONARY 622 (9th ed. 2009)). Belbin does not show how the alleged error was plain and indisputable. He offers only conjecture that the word "should" might have been read as permissive by the average juror. Belbin focuses on the jury question on the residential burglary charge during deliberations for his arguments, but this question from the jury does not suggest that the jury failed to consider each individual count separately.

The record shows independent evidence for the residential burglary conviction, including Belbin's unlawful presence in the residence and ceiling damage, that goes beyond the other uncontested charges. To prove residential burglary, the State had to prove Belbin entered or remained within the home with the intent to commit a crime. Belbin's theory is that he did not enter the residence with intent to commit a crime. This theory fails to account for his actions of remaining in the residence with the intent to have

ongoing contact with his wife or his actions of damaging the ceiling when hiding from law enforcement.

Belbin offers only speculation that the word "should" might have been read permissibly by the jury, but mere speculation about possible juror misinterpretation does not satisfy the manifest error threshold.

Because Belbin has not met his burden under RAP 2.5(a), we decline to review the merits of this unpreserved claim of error.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Staab, C.J.

_____
Lawrence-Berrey, J.

9